## Commonwealth *vs.* Paul Simmons.

Hampden. January 2, 2007. - April 4, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Practice, Criminal,* Indictment placed on file, Sentence, Speedy sentencing. *Due Process of Law,* Indictment placed on file, Sentence. *Constitutional Law,* Sentence, Speedy sentencing.

This court evaluated claims that the criminal defendant had waived to determine whether a substantial risk of a miscarriage of justice existed in the circumstances of the defendant's sentencing [690-691], and concluded that the defendant's motion to "vacate sentence, dismiss indictment, and credit defendant for time served under an erroneous sentence" was properly considered as one brought under Mass. R. Crim. P. 30 (a) [691-692].

Discussion of the practice of placing indictments on file [692-694], and referral of the future of this practice to the rules committee of this court [699-700].

The imposition of sentence on an indictment that had been placed on file with the defendant's consent five years earlier did not violate the defendant's right to substantive due process, as the removal of an indictment from the file was not an action that shocked the conscience or interfered with rights that are implicit in the concept of ordered liberty [694-698]; likewise, the imposition of sentence under these circumstances did not violate the defendant's right to a speedy sentencing, because the defendant, by consenting to the filing, had consented to the delay in sentencing as well [698]; however, the judge who imposed the later sentence erred in failing to consider the over-all scheme of punishment employed by the judge who imposed sentence at the time the indictment was placed on file, and therefore, this court reversed the denial of the defendant's fourth motion for postconviction relief and remanded the case for resentencing [698-699, 700].

Indictment found and returned in the Superior Court Department on May 14, 1981.

A motion to vacate sentence, to dismiss indictment, and for credit for time served was heard by *Daniel A. Ford,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

*Sean J. Gallagher* for the defendant.

SPINA, J. The defendant, Paul Simmons, pleaded guilty to thirteen indictments in 1981. He was sentenced immediately on six indictments, and the remainder were "placed on file." Approximately five years later, the defendant was arrested for a new crime. At his arraignment, one of the 1981 indictments was removed from the file and brought before a different judge to impose a prison sentence on the defendant. The Appeals Court vacated the denial of the defendant's fourth motion for postconviction relief involving this sentence, see *Commonwealth* v. *Simmons*, 65 Mass. App. Ct. 274, 284 (2005), and we granted the Commonwealth's application for further appellate review. We now reverse the denial of the defendant's fourth motion for postconviction relief and remand the case for resentencing, but for different reasons from those articulated by the Appeals Court.

1. *Background.* On September 22, 1981, the defendant, represented by counsel, pleaded guilty to thirteen indictments.[1] Six indictments alleged armed robbery, for which a Superior Court judge (trial judge) sentenced the defendant to prison sentences of from eight to twelve years, to be served concurrently. As occurs regularly in the courts of the Commonwealth, the remaining indictments were "placed on file," which is to say sentencing was suspended indefinitely, but the cases were not dismissed.[2] Although the record indicates that the defendant consented to this disposition, no transcript of the September 22, 1981, proceedings is available. Among these filed indictments was no. 81-1918 for armed assault with intent to rob.

---

[1] The thirteen indictments consisted of six that alleged armed robbery, one that alleged escape or attempt to escape, one that alleged assault and battery on a public employee, one that alleged unlawful possession of a firearm or ammunition, three that alleged assault and battery, and one that alleged armed assault with intent to rob, indictment no. 81-1918.

[2] We note that our jurisprudence commonly has referred to this practice as placing "convictions" on file. See, e.g., *Commonwealth* v. *Ford*, 424 Mass. 709, 713 n.2 (1997). It is well established that a judgment of conviction does not enter unless sentence is imposed, see *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, 447 Mass. 750, 757 n.5 (2006), and cases cited, meaning that the phrase "to place a conviction on file" is internally contradictory. Although this error in nomenclature is minor, we shall refer to the practice as placing the "case" or "indictment" on file.

Shortly after the defendant was released from his sentences on the armed robbery convictions, he was arrested for a new charge of armed robbery, arising out of his involvement in a December 5, 1986, crime.[3] At his December 9, 1986, arraignment on those charges, the Commonwealth's motion to have indictment no. 81-1918 removed from the file and brought forward was granted.[4] On January 2, 1987, a Superior Court judge (sentencing judge) uninvolved with the 1981 proceedings sentenced the defendant to a prison term of from eighteen to twenty years on indictment no. 81-1918. The Commonwealth acknowledges that the 1986 armed robbery charge caused the prosecutor to move for the removal of the indictment from the file for sentencing.

The defendant first challenged this sentence with a pro se motion for a new trial in 1994. His motion claimed that no plea colloquy occurred on September 22, 1981, and that he was not in the court room when his guilty plea was tendered; likewise, he alleged a version of the proceedings in which he did not consent to filing the indictments. The motion was denied by the trial judge. On appeal, the Commonwealth produced an affidavit from the trial judge, who had retired, indicating that he had no specific recollection of the original sentencing, but his usual practice conformed with Mass. R. Crim. P. 12, 378 Mass. 866 (1979). The Appeals Court concluded that the Commonwealth met its burden of showing substantial compliance with rule 12 (c), on the basis of the trial judge's affidavit. Turning to the question of the defendant's consent to the filing of the case, the Appeals Court noted that the trial judge's affidavit was silent as to his practice in this regard and remanded the case to the Superior Court for further reconstruction of the record. After an unsuccessful attempt to contact the trial judge for further investigation, the Commonwealth moved for reconsidera-

[3]The defendant eventually was tried and convicted of the December 5, 1986, armed robbery. He received a prison term of from twenty to thirty years, to be served from and after the sentence arising from indictment no. 81-1918. To the extent that this prison term is relevant, it will be discussed below.

[4]No transcript of the December 9, 1986, proceedings is available, nor is there written record of the motion that prompted the case to be removed from the file.

tion of the interlocutory order. Pointing to the handwritten notes in the clerk's log, the Commonwealth argued that the defendant gave his consent to the filing of the case. On the basis of the Commonwealth's submission, the denial of the defendant's motion for a new trial was affirmed. *Commonwealth* v. *Simmons*, 48 Mass. App. Ct. 1115 (2000). We denied further appellate review. *Commonwealth* v. *Simmons*, 432 Mass. 1105 (2000).

Claiming newly discovered evidence, the defendant filed a second pro se motion for a new trial in April, 2002. The motion was denied after another Superior Court judge found that no such evidence existed and the defendant's allegations of prejudice from the lost transcript either were waived or decided previously. This decision was affirmed by the Appeals Court. *Commonwealth* v. *Simmons*, 57 Mass. App. Ct. 1107 (2003).

In September, 2002, the defendant filed a motion for jail credit, arguing that his sentence on indictment no. 81-1918 did not properly account for his detention time prior to the case being filed. After counsel was appointed for the defendant, the motion was denied on grounds that the defendant's pretrial detention was accounted for at his 1981 sentencing on the six armed robberies. The defendant did not appeal from this ruling.

Now represented by counsel, the defendant filed the motion presently before the court in August, 2003, fashioning it as a motion "to vacate sentence, dismiss indictment, and credit defendant for time served under an erroneous sentence." The motion was denied, but the Appeals Court vacated the sentence on indictment no. 81-1918 and ordered that the defendant be given credit for time served thereunder on the sentence imposed for the 1986 armed robbery. *Commonwealth* v. *Simmons*, 65 Mass. App. Ct. 274, 284 (2005). In an exhaustively researched opinion, the Appeals Court rejected the practice of imposing a sentence on a previously filed indictment where the defendant had not succeeded in overturning a related conviction on appeal or been found to violate express conditions articulated and consented to at the time of filing. *Id.* at 282-284.

2. *Analysis.* a. *Waiver.* The defendant's claims are waived. There can be no disagreement that the defendant was aware of the basis of his claims since his sentencing in 1986, yet he failed to object or appeal from the sentence directly and omitted

the arguments he now makes from three prior challenges.[5] Nonetheless, we evaluate the claims to determine whether there exists a substantial risk of a miscarriage of justice. *Commonwealth* v. *Randolph*, 438 Mass. 290, 294-295 (2002). In circumstances where a defendant is successful in identifying an error, we find a substantial risk of a miscarriage of justice only "when we have 'a serious doubt whether the result . . . might have been different had the error not been made.' " *Id.* at 297, quoting *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999). As we stated in the *Randolph* case, only rarely will an error exert an influence of this magnitude. *Id.* We conclude that this is such a case.

b. *Rule 30 (a)*. The Appeals Court treated the defendant's motion as if it were made under Mass. R. Crim. P. 30 (a), 378 Mass. 900 (1979), despite the absence of any such designation in the motion itself. This interpretation gave the defendant the benefit of the ambiguity created by his silence on this matter. The motion sought to vacate the sentence because of alleged violations of his constitutional right to speedy sentencing and the sentencing judge's consideration of impermissible factors. The defendant expressly sought the crediting of his allegedly erroneous time served against his 1986 sentence, and not a new trial, as would characterize a motion under Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). The Appeals Court's treatment of the motion as if made pursuant to rule 30 (a) therefore was proper.[6]

In *Commonwealth* v. *Lupo*, 394 Mass. 644, 646 (1985), we

---

[5]The defendant has no basis to claim the protection of the "clairvoyance" exception to the waiver doctrine, where a constitutional claim is treated as though properly preserved if the doctrine on which it was based was not developed sufficiently at the time of trial or direct appeal such that the defendant was not afforded a genuine opportunity to raise it. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 295 (2002). As we discuss in part 2.c, *infra*, the law establishing the common-law power of courts to place a case on file and subsequently remove it for sentencing has been well established for over a century.

[6]We note that the defendant's motion could not be considered under Mass. R. Crim. P. 29 (a), 378 Mass. 899 (1979). Under that rule, the trial judge is authorized to revise or revoke the sentence imposed on the written motion of the defendant filed within sixty days of either the imposition of the sentence, the receipt by the trial court of a rescript issued on affirmance of the judgment or dismissal of the appeal, or after entry of any order or judgment of an appel-

stated in dictum that "rule 30 (a) is intended primarily to provide relief for defendants incarcerated in violation of . . . the laws of the Commonwealth." The record is ambiguous as to whether the defendant is still serving the eighteen-to-twenty year sentence that he challenges here, although there are indications that he is not.[7] Even assuming that the defendant is not incarcerated currently for the sentence he is challenging, we properly may consider his motion under rule 30 (a) and reach the merits of his appeal. The defendant's motion does not raise a hypothetical issue because he currently is incarcerated under a "from and after" sentence that is structurally related to the sentence imposed on indictment no. 81-1918. See *Commonwealth* v. *Azar*, 444 Mass. 72, 77 (2005). Cf. *Rodwell* v. *Commonwealth*, 432 Mass. 1016, 1018 (2000) (speculating that rule 30 [a] motion would be unlikely to assist defendant who had completed challenged sentence but still was incarcerated on another conviction). Because we find in his favor, his erroneous time served can be credited against that sentence. The circumstances here are rather unusual, and we choose to address the motion as one properly brought under rule 30 (a).

c. *"Placed on file."* The Appeals Court concluded that, based on prior practice, the procedure of reviewing a case placed on file has been approved in only two circumstances: (1) when a related conviction is reversed on appeal, see, e.g., *Commonwealth* v. *Bianco*, 390 Mass. 254, 255 (1983); and (2) on breach of explicit conditions imposed in connection with the filing, see, e.g., *Commonwealth* v. *Maloney*, 145 Mass. 205, 211 (1887); *Commonwealth* v. *Pelletier*, 62 Mass. App. Ct. 145,

late court denying review or having the effect of upholding the conviction. As to the third alternative, the Reporters' Notes state that the sixty days runs from the time "the finality of the conviction is established upon direct appeal or after such review is denied or withdrawn." Reporters' Notes to Mass. R. Crim. P. 29 (a), Mass. Ann. Laws at 1591 (Lexis Nexis 2006). Given that the defendant did not file a direct appeal, his ability to bring a motion under rule 29 (a) expired sixty days after his January 2, 1987, sentencing. The present motion was filed on August 29, 2003. Therefore, the judge could not consider the defendant's motion as made under the strictly construed time limit of rule 29 (a). See *Commonwealth* v. *Fenton F.*, 442 Mass. 31, 36 (2004).

[7] In his "motion to vacate sentence, dismiss indictment, and credit defendant for time served under an erroneous sentence," the defendant states, without citation to the record, that he already has served the eighteen-to-twenty year sentence on indictment no. 81-1918.

146-147 (2004). *Commonwealth* v. *Simmons, supra* at 278-279. Because the defendant's circumstances did not fall into either of these categories, the Appeals Court held that indictment no. 81-1918 was not removed properly from the file.

Few aspects of our criminal justice system can claim the tenure of indictments "laid on file" in the courts of the Commonwealth. As a predecessor to modern probation, the practice of placing a case on file allowed the would-be sentencing judge discretion in circumstances adjudged to be unduly harsh. See *Commonwealth* v. *Simmons, supra* at 276, citing Grinell, Probation as an Orthodox Common Law Practice in Massachusetts Prior to the Statutory System, 2 Mass. L.Q. 591, 592-612 (1917). The earliest written countenance of the practice in Massachusetts is found in an 1831 decision of the old Municipal Court of Boston, authored by Judge Peter Oxenbridge Thacher, describing the reasons that the defendant's indictment was "laid on file" after a guilty plea:

> "It has sometimes been practised in this court, in cases of peculiar interest, and in the hope that the party would avoid the commission of any offence afterwards, to discharge him on a recognizance of this description. The effect is, that no sentence will ever be pronounced against him, if he shall behave himself well afterwards, and avoid any further violation of the law."

*Commonwealth* v. *Chase,* Thacher's Crim. Cas. 267, 268 (Boston Mun. Ct. 1831).[8]

The seminal decision in this court establishing our common law practice followed in 1874:

> "It has long been a common practice in this Commonwealth, after verdict of guilty in a criminal case, when the court is satisfied that, by reason of extenuating circumstances, or of the pendency of a question of law in a like case before a higher court, or other sufficient cause,

---

[8]Although this was a decision of the old Municipal Court of Boston, a footnote to the decision reports that Chief Justice Lemuel Shaw "delivered an opinion" for the Supreme Judicial Court sustaining Judge Thacher's decision after a hearing on the defendant's petition for certiorari. *Commonwealth* v. *Chase,* Thacher's Crim. Cas. 267, 270 n.1 (Boston Mun. Ct. 1831).

public justice does not require an immediate sentence, to order, with the consent of the defendant and of the attorney for the Commonwealth, and upon such terms as the court in its discretion may impose, that the indictment be laid on file . . . ."

*Commonwealth* v. *Dowdican's Bail*, 115 Mass. 133, 136 (1874). The *Dowdican's Bail* court noted that the practice of filing indictments enjoyed inferential statutory support in the form of contemporaneous legislative enunciations of criminal acts that were not to be filed. *Id.*, citing St. 1865, c. 223, and St. 1869, c. 415, § 60. When the United States Supreme Court struck down a similar practice in the Federal courts as lacking congressional sanction, it distinguished the *Dowdican's Bail* case on the basis of this legislative authorization. *Ex parte United States, petitioner*, 242 U.S. 27, 49 (1916).

The practice of placing cases on file is not defined expressly in the General Laws. Although G. L. c. 277, § 70B, requires a written statement of reasons prior to the filing of a case, it does not specifically authorize the practice, define its boundaries or include the common-law necessity of consent. See *DuPont* v. *Superior Court*, 401 Mass. 122, 123 (1987); *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1974). Nonetheless, the laying of cases on file enjoys strong legislative recognition. It is well established that the Legislature "must be assumed to know the preexisting law and the decisions of the [Supreme Judicial Court]." *Gillette Co.* v. *Commissioner of Revenue*, 425 Mass. 670, 677 (1997), quoting *Selectmen of Topsfield* v. *State Racing Comm'n*, 324 Mass. 309, 313 (1949). Further, we can draw conclusions from the Legislature's decision not to enact statutory changes in the face of such common law. See *Commonwealth* v. *Smith*, 46 Mass. App. Ct. 822, 825 (1999). We are now presented with an even stronger inference — where the Legislature has not merely acquiesced, but has delineated expressly crimes where the case may not be placed on file. See *Commonwealth* v. *Simmons*, 65 Mass. App. Ct. 274, 277 n.8 (2005), and statutes cited. Given the level of acknowledgment in the General Laws, it is clear that the placing of criminal cases on file enjoys the support of the Legislature.

Yet it is not the filing itself that gives rise to the defendant's

primary complaint.[9] Rather, it is the removal of his indictment from the file, after approximately five years, with which he disagrees. The defendant raises three separate, but related, challenges to the sentencing judge's removal of his case from the file. He argues that the judge's action was violative of his substantive due process rights, as well as his right to a speedy sentencing. The defendant also argues that the sentencing judge impermissibly considered his 1986 offense in handing down the sentence at issue.

There is no merit to the defendant's assertion that the process of removing his case from the file violates substantive due process. The concept of substantive due process protects against certain governmental actions that cannot be undertaken regardless of the procedural protections that accompany them because they are said to "shock the conscience"[10] or interfere with rights that are "implicit in the concept of ordered liberty." *Aime* v. *Commonwealth*, 414 Mass. 667, 673 (1993), quoting *Rochin* v. *California*, 342 U.S. 165, 172 (1952), and *Palko* v. *Connecticut*, 302 U.S. 319, 325-326 (1937). In essence, the defendant is arguing that the sentencing judge unfairly violated

[9]Although the defendant raises constitutional concerns about the validity of the filing process, they are without merit. The defendant argues that such a process violated his procedural due process rights because it was not accompanied by notification that a judge has the power at any time, however distant, to resurrect the indictment and impose sentence. Acceptable due process is " 'not a technical conception with fixed content,' . . . but a 'flexible' concept that 'calls for such procedural protections as the particular situation demands.' " *Commonwealth* v. *Torres*, 441 Mass. 499, 502 (2004), quoting *Cafeteria & Restaurant Workers Union, Local 473* v. *McElroy*, 367 U.S. 886, 895 (1961), and *Mathews* v. *Eldridge*, 424 U.S. 319, 334 (1976). We are disadvantaged by the absence of a transcript of the 1981 proceedings, but we may infer from the record both that the trial judge conducted a plea colloquy that conformed with Mass. R. Crim. P. 12, 378 Mass. 866 (1979), informing the defendant of the maximum sentence that could be imposed on each count, and that the defendant consented to the filing of seven indictments while being represented by counsel. Taking these factors together, we cannot conclude that the filing of the defendant's indictments violated procedural due process norms. *Marks* v. *Wentworth*, 199 Mass. 44, 45-47 (1908) (discussing effect of consent). The lack of an attendant colloquy should be included in the review by this court's rules committee, as ordered *infra*.

[10]It certainly does not shock the conscience that a case is removed from the file and a sentence is imposed in response to the defendant's arrest for another armed robbery.

an unspoken agreement that criminal indictments placed on file would not subsequently be removed.

It may be true that indictments placed on file typically are left on file, barring either of the two scenarios identified by the Appeals Court. *Commonwealth* v. *Simmons*, 65 Mass. App. Ct. 274, 278 (2005), citing *United States* v. *Hines*, 802 F. Supp. 559, 572 (D. Mass. 1992). Even a record of practice as well established as this does not override the common-law rule, unaltered since its creation, that the court retains the ability, at any time, to remove the indictment from the file. Although nearly two centuries have passed since Judge Thacher's decision, no justification has improved on his articulation:

> "I cannot doubt the court may, on motion, have the party brought in and sentenced at any subsequent period. For what was the duty of the court to do at any one time, cannot cease to be its duty by delay. . . . If it should be said, however, to be hard measure to pronounce judgment after it has been suspended for years; I answer, that the party might at any time have appeared in court, and demanded the judgment of law. It has been delayed from tenderness and humanity, and not because it had ceased to be the right of the government to claim the judgment."

*Commonwealth* v. *Chase*, Thacher's Crim. Cas. 267, 268-269 (Boston Mun. Ct. 1831). See *Commonwealth* v. *Dowdican's Bail*, 115 Mass. 133, 136 (1874) ("Such an order . . . is a mere suspending of active proceedings in the case . . . and leaves it within the power of the court at any time, upon the motion of either party, to bring the case forward and pass any lawful order or judgment therein"). See also *Commonwealth* v. *Bianco*, 388 Mass. 358, 370, *S.C.*, 390 Mass. 254 (1983); *Commonwealth* v. *Brandano*, 359 Mass. 332, 336 (1971); *Marks* v. *Wentworth*, 199 Mass. 44, 45 (1908). Having benefited from the largesse of the court, the defendant subsequently may not call its retraction unwarranted.

Likewise, although our appellate jurisprudence on the practice of removing a case from the file typically has included only instances where a defendant either successfully appealed from a parallel conviction or violated some express condition of the filing, no common-law rule has so limited the practice. See *Com-*

*monwealth* v. *Bianco*, 390 Mass. 254, 257 (1983) ("The defendants have cited no authority in support of their argument that intervening misconduct must be shown"). Indeed, there is evidence to suggest that the practice of filing a case has long included the tacit consideration of the defendant's prospective good behavior. The Commonwealth's brief in *Commonwealth* v. *Dowdican's Bail*, *supra*, written by the Attorney General, described the practice of filing at that time with some familiarity, given his office's involvement with the criminal courts: "The defendant, in all cases where sentence was thus delayed on account of extenuating circumstances, was put on his good behavior, and under bonds, as it were, to live honestly." Here, we have no record of the filing proceedings — no information from the attorney who represented the defendant, no information from the prosecutor who may have arranged the plea bargain, and no information from the trial judge who received the parties' consent to file.[11] In the absence of such a record, it is fair to infer that the case was placed on file with the understanding that traditionally accompanied such actions — the defendant could avoid sentence on indictment no. 81-1918 so long as he did not subsequently give the Commonwealth cause to move for removal of the indictment from the file. The

[11]The fault for the lack of any transcript does not lie with either the Commonwealth or the defendant. In the course of the 1986 proceedings, the stenographer reported that she was unable to locate her stenographic notes of the 1981 plea colloquy and sentencing after a diligent search, and therefore, no transcript could be produced. Unlike our decisions on postconviction motions in which the absence of a transcript is attributable to proper destruction of stenographic notes under S.J.C. Rule 1:12, as appearing in 382 Mass. 717 (1981), see, e.g., *Commonwealth* v. *Lopez*, 426 Mass. 657, 661-662 (1998), here the stenographic notes were not retained for the mandatory six years. The closest analog is thus *Commonwealth* v. *Quinones*, 414 Mass. 423 (1993), where the transcript was unavailable because the stenographer's notes had been stolen. In the *Quinones* case, we affirmed the denial of the defendant's motion to withdraw his guilty pleas on the basis of a reconstructed record that included the trial judge's memory of his regular practice. *Id.* at 432-434. In the defendant's case, the Appeals Court reviewed the circumstances surrounding the missing record in 1997 and again in 2000. Based on a partially reconstructed record, the Appeals Court determined the defendant's pleas to be voluntary and ruled that he did indeed give his consent to the filing of his indictments. Here, the Appeals Court affirmed the denial of the defendant's first motion for a new trial, challenging the plea colloquy, sentencing, and filing proceedings, on the basis of the reconstructed record.

defendant has failed to show that the removal of his 1981 case from the file violated his substantive due process rights.

The defendant also argues that the sentencing judge's action violated his right to a speedy sentencing. Although the contours of such a right are difficult to define,[12] it was not violated here. By consenting to the filing, the defendant also consented to the delay in sentencing. Had he wished to be sentenced earlier, he need only have moved to do so. Cf. *Marks* v. *Wentworth, supra* at 45 (recognizing defendant's right to refuse consent to file and demand immediate sentencing). As in *Commonwealth* v. *Bianco*, 390 Mass. 254, 257-258 (1983), the relevant time period to be considered begins on the date that the case was removed from the file and ends at the time of sentencing. In the defendant's case, the indictment was removed from the file on December 9, 1986, and he was sentenced on January 2, 1987. There was no violation of his right to speedy sentencing.

The defendant's remaining claim alleges that the sentencing judge inappropriately took into account his subsequent actions in sentencing him to from eighteen to twenty years on the filed indictment. In support, he cites the Commonwealth's concession that the motion to remove the case from the file was motivated by the defendant's arrest on the new armed robbery charge in 1986. In keeping with due process, a judge may not punish a defendant for conduct unconnected to the facts underlying the case, *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 221 (1976), nor is it within a judge's discretion to punish a defendant on the basis of untried criminal charges. *Commonwealth* v. *Mills*, 436 Mass. 387, 400 (2002). The defendant's argument conflates the justification for removing the case from the file with the justification for sentencing. As we already have stated, the sentencing judge acted properly in removing the indictment from the file on the motion of the Commonwealth.

It is true that once removed from the file, the sentencing judge retains the same discretion in punishment as that afforded

---

[12]See *Pollard* v. *United States*, 352 U.S. 354, 361-362 (1957); *Commonwealth* v. *McInerney*, 380 Mass. 59, 65-66 (1980); G. L. c. 279, § 3A (district attorney shall move for sentencing within seven days of guilty plea or verdict); Mass. R. Crim. P. 28 (b), 378 Mass. 898 (1998) (defendant entitled to be sentenced "without unreasonable delay").

the original trial judge. Cf. *Commonwealth* v. *Bruzzese*, 437 Mass. 606, 617-618 (2002) (straight probation is merely deferral of sentencing, and maximum sentence may be imposed if probation is revoked). This discretion, however, cannot be exercised in a vacuum. Rather, the sentencing judge must consider the over-all scheme of punishment employed by the trial judge. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 439-440 (1975). See also *Commonwealth* v. *Simmons*, 65 Mass. App. Ct. 274, 282 (2005). The sword of Damocles still properly hangs over a defendant who has consented to placing his case on file, but it should not be wielded without restraint.

In the present case, the sentencing judge handed down a prison term of from eighteen to twenty years on a single count of armed assault with intent to rob.[13] The trial judge, who had heard the evidence in the case, imposed a sentence of six concurrent terms of from eight to twelve years in prison on six indictments charging armed robbery,[14] with the remaining cases placed on file. When viewed in this relief, the discord between the two sentences creates a substantial risk of a miscarriage of justice. The sentencing judge erred by failing to consider the original sentencing scheme. Had he done so, the outcome most certainly would have been different.

Further, although today we uphold the practice of the placing of cases on file with the consent of the defendant, we recognize that Massachusetts now stands alone in this regard. See *Commonwealth* v. *Simmons*, 65 Mass. App. Ct. 274, 279 n.10 (2005). We believe there are valid reasons for continuing this common-law tradition, namely the discretion and flexibility afforded to judges, prosecutors, and defendants. See Fisher, Plea Bargaining's Triumph, 109 Yale L.J. 857, 936-964 (2000) (arguing that placing cases on file was used by prosecutors since its origin to reach compromises in which defendants were protected from judicial severity and prosecutors were able to guard against unduly lenient sentences). In light of this landscape, we believe it warrants referring the future of placing indictments on file,

---

[13]Armed assault with intent to rob, proscribed by G. L. c. 265, § 18 (*b*), carries a maximum punishment of twenty years in prison.

[14]Armed robbery, proscribed by G. L. c. 265, § 17, carries a maximum punishment of life, or any term of years, in prison.

including the necessity of colloquy confirming consent and enunciating express expectations of good behavior, to the rules committee of this court.

For the foregoing reasons, we reverse the denial of the defendant's fourth motion for postconviction relief and remand the case for resentencing on indictment no. 81-1918.

*So ordered.*