2008 ME 31

**STATE of Maine**

v.

**Michael A. RUSSO.**

Supreme Judicial Court of Maine.

Argued: Nov. 7, 2007.
Decided: Feb. 26, 2008.

Elizabeth A. Germani, Esq., Jon C. Gale, Esq. (orally), Germani & Riggle, Portland, ME, for Michael A. Russo.

Stephanie Anderson, Dist. Atty. (orally), Julia Sheridan, Asst. Dist. Atty., Portland, ME, for the State of Maine.

Stephen J. Schwartz, Esq., Schwartz & Schwartz, P.A., Portland, ME, for Maine Association of Criminal Defense Lawyers.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

LEVY, J.

[¶ 1] Michael A. Russo appeals from the Superior Court's (Cumberland County, *Warren, J.*) denial of his motion to dismiss an indictment charging aggravated assault (Class B), 17–A M.R.S. § 208(1)(A) (2007), and two counts of misdemeanor assault (Class D), 17–A M.R.S. § 207(1)(A) (2007), contending that the State is barred from prosecuting him on these charges by a filing agreement he previously entered into with the State in connection with a separate criminal complaint charging misdemeanor assault (Class D), 17–A M.R.S. § 207(1)(A), based on the same conduct. Because we agree with Russo, we vacate the denial and remand for dismissal of the charges in this case.

## I. BACKGROUND

[¶ 2] The relevant facts are not in dispute. Russo was a tenant at a commercial property in Falmouth owned by David Libby. On June 21, 2006, Russo and Libby were involved in an altercation on the premises that resulted in a call to the police.

[¶ 3] The day after the altercation, Russo was charged with a single count of

assault (Class D), pursuant to 17–A M.R.S. § 207(1)(A), in the District Court. Russo pleaded not guilty and requested a jury trial, at which time the case was removed to the Superior Court.

[¶ 4] The State informed Libby by letter in July 2006 that, should Russo plead guilty, it would recommend a $500 fine plus restitution for Libby's injuries. In August 2006, Libby expressed his opposition to the proposed disposition in his written victim impact statement, in which he also described his need for physical therapy, electrical shock treatments, and electronic cortisone penetrations to treat his injuries. Libby also returned a form indicating that he wished to be present at any plea and sentencing.

[¶ 5] On December 14, 2006, the day the matter was scheduled on the trial calendar, Russo and an Assistant District Attorney conducted negotiations and reached an agreement by which the assault charge would be filed for one year pursuant to M.R.Crim. P. 48(c). The Assistant District Attorney called Libby and left a recorded telephone message indicating he planned to file the matter. The filing agreement required Russo to engage in "no further criminal activity/civil violations/traffic violations," pay $750, and have no contact with Libby.[1]

[¶ 6] With Russo's approval, the State moved the court (*Cole, J.*) to file the assault charge for one year. According to Russo, the court asked the State about input from Libby, to which the State responded that Libby had not been happy with the original offer to settle the case and would likely not agree to the filing, but that an attempt to reach him had not been successful. The court granted the motion to file and Russo paid $750 that day. The court made no finding that the court costs of $750 reflected the actual costs of prosecution, as required by M.R.Crim. P. 48(c) before costs over $500 may be imposed, and the docket sheet alternatively describes this amount as "court costs" and as a "fine."

[¶ 7] The next day, Libby wrote to the court protesting the disposition. Three weeks later, the State obtained a three-

---

1. The filing agreement stated:

STATE OF MAINE
   vs.
MICHAEL RUSSO
         STATE'S MOTION TO FILE
            (M.R.Crim. P. 48(c))
   NOW COMES the Attorney for the State and moves to file this Complaint for a period of one year in accordance with the following conditions:
   1. No further criminal activity/civil violations/traffic violations;
   2. Payment today of Court costs $750.00;
   3. No contact, direct or indirect with David Libby.
Dated: December 14, 2006
/s/ ——————————
   . . . .
Attorney for the State
   **CONSENT OF THE DEFENDANT**
   The above-named defendant consents to the filing of this case, on the conditions set forth above. The defendant further understands that this consent acts as a waiver of any rights to a speedy trial; that the Attorney for the State may place the case on the active trial list during the period of the filing; and that if the Attorney for the State takes no action to bring the case to the attention of the Court within the period of the filing, the Clerk shall enter a dismissal of the case without prejudice.
Date: December 14, 2006
/s/ ——————————
Defendant
            **ORDER**
   Upon the State's Motion, it is hereby ORDERED that the Complaint be filed upon the conditions set forth above.
Date: 12–14–06
/s/ ——————————
Justice, Superior Court

count indictment against Russo containing one count of aggravated assault (Class B), 17–A M.R.S. § 208(1)(A), and two counts of misdemeanor assault (Class D), 17–A M.R.S. § 207(1)(A). These charges are based on the same incident between Russo and Libby that was the basis for the previously filed assault charge.

[¶ 8] At his arraignment, Russo pleaded not guilty to all counts and subsequently filed a motion to dismiss the indictment, asserting that the indictment was barred by the earlier filing agreement. Although recognizing that "the equities plainly lie" with Russo, the Superior Court denied the motion, reasoning that because any future dismissal would be "without prejudice," the plain meaning of M.R.Crim. P. 48(c) did not preclude the State from immediately reinstating a charge. The court then directed the District Attorney to reimburse Russo the $750 he had previously paid in fulfillment of the filing agreement. Russo subsequently filed a motion for reconsideration, which the court denied, and this appeal followed. We granted permission to the Maine Association of Criminal Defense Lawyers to appear as amicus curiae.

## II.  DISCUSSION

[¶ 9] The interpretation of the Rules of Criminal Procedure is a legal question that we review de novo. *State v. Johnson*, 2006 ME 35, ¶ 9, 894 A.2d 489, 491. "[C]riminal rules, as criminal statutes, are to be strictly construed in favor of criminal defendants, especially where substantial rights are involved." *Shorette v. State*, 402 A.2d 450, 460 (Me.1979).

[¶ 10] Russo and the amicus curiae argue that the filing agreement signed by Russo and the Assistant District Attorney, and approved by the court, should be governed by fundamental contract principles. The State in turn argues that the language of the filing agreement does not preclude it from prosecuting Russo in a separate proceeding based on an indictment concerning the same occurrence.

[¶ 11] "There long has been a practice in this State, where good cause is shown, to place a complaint or indictment on file . . . ." *State v. Fixaris*, 327 A.2d 850, 851 (Me.1974). "Such practice has long existed in this state, New Hampshire and Massachusetts," *Ex parte St. Hilaire*, 101 Me. 522, 525, 64 A. 882, 883 (1906), with Massachusetts reporting that its written records of the practice date back to 1831, *see Commonwealth v. Simmons*, 448 Mass. 687, 863 N.E.2d 549, 555 (2007). A filing is not a final judgment. It is instead a mutually agreed-to suspension and possible dismissal of the proceedings, subject to conditions set forth in the filing agreement and the control of the court:

> Such an order is not equivalent to a final judgment, nor to a nolle prosequi, nor discontinuance, by which the case is put out of court; but is a mere suspending of active proceedings in the case, which dispenses with the necessity of entering formal continuances upon the docket, and leaves it within the power of the court at any time, upon the motion of either party, to bring the case forward and pass any lawful order or judgment therein.

*Fixaris*, 327 A.2d at 852 (quoting *St. Hilaire*, 101 Me. at 525–26, 64 A. at 883–84).

[¶ 12] The process applicable to filings is set forth in M.R.Crim. P. 48(c), which allows an attorney for the State—with the consent of the defendant—to file an indictment, information, or complaint for up to one year.[2] Filings are generally used to

---

2.  M.R.Crim. P. 48(c) provides:

**(c) Filing.** The attorney for the state, with the written consent of the defendant, may

dispose of a case in which a conviction may not be appropriate or attainable. M.R.Crim. P. 48(c) Advisory Committee's Note to 1991 amend. The traditional practice—a predecessor to modern probation—has been that a filed case would be placed back on the active docket only if the defendant violated some express condition of the filing. *See Simmons*, 863 N.E.2d at 557; *Welch v. State*, 120 Me. 294, 297-98, 113 A. 737, 738 (1921). In this case, there is no suggestion that Russo violated any of the conditions of the filing agreement.

[¶ 13] The State concedes that it did not follow the customary practice when it obtained the indictment against Russo based on the same occurrence that was the subject of the previously filed complaint. The State estimates that during the tenure of the current Cumberland County District Attorney, the State has been a party to filing agreements in as many as one hundred thousand cases. Yet neither party cites to a single prior instance when the State reactivated a filed complaint or, as here, initiated a separate prosecution based on the same occurrence underlying the filed complaint, without the State having reason to believe that the defendant had violated a condition of the filing agreement.

[¶ 14] As Russo and the amicus curiae suggest, the courts and the bar of this State have long treated motions to file as the equivalent of a plea agreement. We therefore explicitly endorse what has long been implicitly assumed: a motion to file is a form of plea agreement and our precedent regarding plea agreements governs filings and their enforceability. "Plea agreements are contracts and contract principles apply when interpreting them." *State v. Murphy*, 2004 ME 118, ¶ 8, 861 A.2d 657, 661. Furthermore, because a defendant's constitutional rights are implicated, agreements of this nature are subject to greater scrutiny than is normally afforded to commercial contracts. *Id.* ¶ 9, 861 A.2d at 661. We review the interpretation of a plea agreement de novo, with the State "bear[ing] responsibility for any lack of clarity." *Id.* ¶¶ 8-9, 861 A.2d at 661.

[¶ 15] As a preliminary matter, the State and Russo do not debate the meaning of the filing agreement. As characterized by the State at oral argument, the agreement embodies the parties' intent that at the end of the filing period, absent a violation of the conditions of the agreement by Russo, "the charges . . . would go

file an indictment, information or complaint for a definite period of up to one year with or without conditions or costs. The approval of the court for filing is unnecessary unless the attorney for the state requests the assessment of costs. Costs in an amount up to $500 may be assessed regardless whether the costs assessed reflect the actual costs of prosecution. Costs in excess of $500 may only be assessed upon a finding by the court that the costs reflect the actual costs of prosecution. If the attorney for the state takes no action to bring the indictment, information or complaint to the attention of the court during the period of filing, at the expiration of the filing period the clerk shall enter a dismissal of the charge without prejudice.

Filings in the District Court are also addressed in 4 M.R.S. § 173 (2007), which provides, in pertinent part:

§ 173. Costs and fees; criminal
The following provisions shall apply to the District Court:
1. Definitions and limitations. . . . Nothing in this section shall be interpreted to prohibit a court from filing a case upon payment of costs without a conviction or adjudication; provided that upon motion at any time by either party, the court shall bring a filed case forward and proceed to a disposition of the pending complaint.

*See also State v. Fixaris*, 327 A.2d 850, 852 (Me.1974) (analogizing a filing pursuant to 4 M.R.S. § 173 to the traditional practice).

away—they would be dismissed and not be resurrected."

[¶ 16] We therefore conclude that the filing agreement controls the circumstances under which the State may reactivate the criminal proceeding in which the complaint was filed. What remains for decision, however, is whether the agreement also constrains the State's ability to initiate a separate criminal proceeding against the same defendant based on the same occurrence. We answer this question positively based on the specific filing agreement in this case.

[¶ 17] By entering into the filing agreement, Russo waived his right to a speedy trial and voluntarily subjected himself to the conditions set forth in the agreement. In exchange, the State agreed not to subject Russo to trial during the filing period and, if Russo fulfilled all of the conditions of the agreement, the criminal complaint "would be dismissed and not be resurrected." Because a filing agreement is construed to fulfill the parties' intentions, with any ambiguities resolved in favor of the defendant, *see Murphy,* 2004 ME 118, ¶ 9, 861 A.2d at 661, it is manifest that the State's initiation of this separate proceeding is a substantial breach of the parties' agreement. The filing agreement conferred upon Russo the benefit that he would not have to actively defend himself or stand trial, absent his violation of the agreement's conditions, and if he successfully fulfilled the terms of the agreement, the matter would come to an end. By initiating this separate proceeding, the State unilaterally erased that benefit.

[¶ 18] The State also contends that notwithstanding the parties' intentions and the agreement's plain language, it is implicit in the agreement that the State is free to initiate the same or additional criminal charges against the defendant in a separate proceeding, noting that there is no language in the agreement or Rule 48(c) that provides otherwise. This contention—that the filing agreement contains an implicit term that effectively nullifies its explicit terms and intended purpose—is highly unpersuasive. Filing agreements, like plea agreements, are an essential and desirable part of the criminal justice process. *See Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). To accept the State's interpretation would be to render filing agreements unenforceable, leaving them destined to become a vestigial practice within the criminal justice process.

[¶ 19] Nor are we persuaded by the State's contention that its initiation of a separate proceeding is somehow authorized by the fact that under Rule 48(c), the ultimate dismissal of a filed charge is to be "without prejudice." For purposes of the rule, a dismissal without prejudice relates to the State's right to prosecute the defendant for the same offense. *See United States v. Rivero,* 532 F.2d 450, 457 (5th Cir.1976); *United States v. Ortega–Alvarez,* 506 F.2d 455, 458 (2d Cir.1974). Once a filing agreement has been approved by the court, however, the State's right to reinitiate the same proceeding that has been dismissed without prejudice is subject to the supervision and approval of the court. A judicially approved filing agreement "leaves it *within the power of the court* at any time, upon the motion of either party, to bring the case forward and pass any lawful order or judgment therein." *Fixaris,* 327 A.2d at 852 (quoting *St. Hilaire,* 101 Me. at 525–26, 64 A. at 884) (emphasis added). The "without prejudice" provision in Rule 48(c) does not authorize the State to reinitiate the same proceeding or, as in this case, initiate a separate proceeding, without court approv-

al.[3] When, as here, the parties intended the agreement to be the end of the matter, a court will not frustrate their intentions by granting such approval absent a breach of the agreement's terms by the defendant.[4]

The entry is:

Judgment vacated. Case remanded for dismissal of the indictment.

**3.** Prosecutors engaged in plea bargaining are held "to the most meticulous standards of both promise and performance." *United States v. Riggs*, 287 F.3d 221, 224 (1st Cir. 2002) (quotation marks omitted). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Because defendants have long relied on the State's historic practice of disposing of charges at the end of the filing period, if the State wishes to preserve the right to re-initiate a proceeding after the filing period even when no breach has occurred, this right should be expressly reserved in the filing document reviewed and signed by the defendant. *See United States v. Frazier*, 340 F.3d 5, 10 (1st Cir.2003) (noting that plea agreements must be read to prevent end-runs around the "benefit of the bargain" upon which a defendant has relied).

**4.** Russo raises a number of additional arguments as to why the State may not resurrect a filed charge without cause or pursue a separate indictment based upon the same event or conduct as a filed charge, including a claim that the indictment obtained in this case after he had paid a $750 fine in the initial case not found to reflect actual court costs violates the double jeopardy provisions of the Maine and U.S. Constitutions. *See* ME. CONST. art. I, § 8; U.S. CONST. amend. V. Because we find for Russo on other grounds, we do not consider his constitutional claims.