STATE OF MAINE     SUPERIOR COURT
CUMBERLAND, SS.                         CIVIL ACTION
                                        DOCKET NO. CV-09-30

BATH SAVINGS INSTITUTION,

         Plaintiff

v.                                      ORDER

ROBER J. RUFFNER,

         Defendant


         This matter comes before the court on plaintiff Bath Savings Institution's motion

for summary judgment pursuant to M.R. Civ. P. 56.

         Defendant Robert Ruffner resides at 23 Bowdoin Street, in Yarmouth, Maine.  On

December 22, 2004, defendant executed and delivered to Bath Savings Institution a

Promissory Note in the original principal amount of $312,000.  To secure that note, on

that same date defendant also executed and delivered to plaintiff a mortgage deed on

the real estate at 23 Bowdoin Street.   On April 14, 2005, defendant executed and

delivered a second promissory note to plaintiff.  That note stated an original principal

amount of $25,000 and was secured by a second mortgage on the real property at

23 Bowdoin Street, also dated April 14, 2005.  Both mortgages were duly recorded.

         On January 16, 2009, plaintiff filed this action to foreclose on the mortgages, and

plaintiff filed its motion for summary judgment on May 12, 2009.  After numerous

defensive procedural and substantive motions by the defendant, counter-filings by the

plaintiff, and settlement negotiations held during the summer of 2009, the defendant

has advised the court during oral argument that it is relying completely on defendant's

attempt to bring his payments current, in accordance with the mortgage.  Plaintiff seeks

judgment on its motion. The major obstacle and current dispute concerns the parties'

rights under the mortgages. Plaintiff has proposed a payoff sum in the vicinity of $26,750.93, and demands that defendant sign an agreement pursuant to 14 M.R.S.A. § 6321. Defendant claims that this agreement is contrary to his rights under section 19 of the mortgage and refuses to sign. The parties' dispute over the construction and application of section 19 is before the court.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. "A party who moves for a summary judgment must properly put the motion and, most importantly, the material facts before the court, or the motion will not be granted, regardless of the adequacy, or inadequacy, of the nonmoving party's response." *Levine*, 2001 ME 77, ¶ 5, 770 A.2d at 655. "A motion for summary judgment must include the following: (1) the motion, including the Rule 7(b) notice; (2) a memorandum of law in support of the motion; (3) a statement of material facts, with appropriate record references; (4) copies of the corresponding record references; and (5) a proposed order. *Id.* at ¶ 6, 770 A.2d at 655 (citing M.R. Civ. P. 7, 56). "The record references must refer to evidence of a quality that could be admissible at trial." *Id.* at ¶ 6, 770 A.2d at 656 (citing M.R. Civ. P. 56(e)).

"To avoid a summary judgment, the nonmoving party must respond by filing (1) a memorandum of law in opposition to the motion for summary judgment; (2) a statement of material facts in opposition, with appropriate record references; and (3) copies of the corresponding record references." *Id.* at ¶ 6, 770 A.2d at 655–56 (citing M.R. Civ. P. 7, 56). The statement of material facts in opposition "must explicitly admit, deny, or qualify" the moving party's facts, "and a denial or qualification must be supported by a record citation." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 10, 824 A.2d 48, 52–53 (quoting *Levine*, 2001 ME 77, ¶ 6 n.5, 770 A.2d at 655) (quotations

2

omitted). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations . . . shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4).

Under 14 M.R.S.A. § 6321, a mortgagee in plaintiff's position may enter an agreement with a defaulting mortgagor in which the mortgagee stays the foreclosure process so long as the mortgagor brings the loan current and makes subsequent payments on time. If the mortgagor fails to make timely payments, the mortgagor may "resume the foreclosure process at the point at which it was stayed." 14 M.R.S.A. § 6321. Absent such an agreement, the mortgagee's acceptance of value to be applied to the mortgage constitutes a waiver of the foreclosure action. *Id.* Plaintiff correctly asserts that the agreement it presented to defendant is the sort authorized by § 6321 because it stipulates that while defendant may continue to make payments pursuant to the terms of the notes and mortgages, plaintiff retains its right to seek judgment on the current foreclosure action.

Defendant does not ground his objection to the agreement in § 6321. Instead, defendant argues that in section 19 of the mortgage, plaintiff waived its right to suspend the action, giving defendant the right to reinstate the loan as if he had never defaulted on his payments. Section 19, in pertinent part, states that defendant has the "right to have enforcement . . . *discontinued*" if:

> (4) [Defendant does] whatever [Plaintiff] reasonably requires to assure that *[Plaintiff's] Interest* in the Property, *[Plaintiff's] rights* under this Security Instrument, and *[Defendant's] obligations* . . . continue unchanged.

Mortgage, pp. 12–13 (emphasis added). If defendant meets all necessary conditions, "then the Note and [Mortgage] will remain in full effect *as if immediate payment in full had never been required.*" *Id.* at 14 (emphasis added).

3

Defendant's argument presents this court with two questions. First, does the agreement alter plaintiff's rights or defendant's obligations? Second, does the defendant's right under section 19 to have the note and mortgage remain in effect "as if immediate payment in full had never been required" preclude plaintiff from suspending the foreclosure action and instead require full dismissal?

To answer the first question, the agreement does theoretically expand plaintiff's interest in defendant's property, but does not appear to alter defendant's obligations. The agreement contains a cross-default and cross-collateralization provision that makes "all [c]ollateral . . . that [plaintiff] has or may have or may in the future acquire from [defendant] . . . security for all obligations that the Borrower now have [sic] or may in the future that are due and owing to [plaintiff]." In theory this radically expands plaintiff's interests in defendant's property, though in practice the only collateral in question is the property already subject to the mortgage. The agreement also requires defendant to release plaintiff from any and all future claims and defenses, but this affects defendant's *rights* while section 19 only protects defendant's *obligations*. While the agreement could be deemed an impermissible expansion of plaintiff's rights or otherwise unreasonable, it is within the bounds of section 19.

The second question is more problematic. Section 19 gives defendant the right to have enforcement of the mortgage discontinued, subject to certain conditions. If defendant meets those conditions, it will be "as if immediate payment in full had never been required." Defendant argues that this language requires plaintiff to dismiss the foreclosure action and constitutes a waiver of plaintiff's § 6321 right to merely stay the proceedings. Plaintiff would argue that section 19 only requires the terms of the notes and mortgages to remain in effect as if the loan had not been accelerated, and does not require it to forgive defendant's prior default by dismissing the action. Plaintiff's

position would interpret "discontinue" to require a halt in the action, but not outright abandonment.

The parties' dispute is one of contract interpretation. Whether contract language is ambiguous is a question of law, as is the interpretation of unambiguous language. *Benton Falls Assocs. v. Cent. Me. Power Co.*, 2003 ME 99, ¶ 13, 828 A.2d 759, 763 (citing *Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME 154, ¶ 8, 756 A.2d 515, 517). When called to interpret contract language, the Court must examine the entire agreement and give language its plain meaning. *State v. Murphy*, 2004 ME 118, ¶ 9, 861 A.2d 657, 661. Contract language is ambiguous and its meaning a question of fact "if it is reasonably susceptible to different interpretations." *Benton Falls Assocs.*, 2003 ME 99, ¶ 13, 828 A.2d at 763.

Defendant's interpretation of section 19 is supported by the plain definition of the word "discontinue" and by the terms of section 22 of the Mortgage. Webster's Dictionary defines the word "discontinue" as "to break off . . . end the existence of . . . terminate by discontinuance." WEBSTER'S NEW INTERNATIONAL DICTIONARY 646 (Philip Babcock Gove et al. eds., 3d unabridged ed. 2002). This definition, through the inclusion of the legal term "discontinuance,"[1] strongly implies that discontinued enforcement under section 19 requires Plaintiff to dismiss the suit.

Furthermore, section 19 states that if defendant satisfies the enumerated conditions, the terms of the notes and mortgages will remain in effect "as if immediate payment in full had never been required." Section 22 of the mortgage forces plaintiff to require immediate payment in full before it can bring a foreclosure action. Reading sections 19 and 22 together, it would appear contradictory for plaintiff to maintain any form of ongoing foreclosure action if "immediate payment in full had never been

---

[1] Black's Law Dictionary defines "discontinuance" as "The termination of a lawsuit by the plaintiff; a voluntary dismissal or nonsuit." 212 (3d pocket ed. 2006).

5

required." It follows that section 19 precludes plaintiff from requiring defendant to sign an agreement that suspends the foreclosure action per § 6321 in order to have the foreclosure action discontinued.

Defendant's interpretation gains further support from the state of the law in 2004 when the Mortgage in question was executed. At that time 14 M.R.S.A. § 6321 did not give mortgagees the right plaintiff now seeks to exercise. The Maine Legislature did not specifically authorize mortgagees to suspend foreclosure after a default until 2007. P.L. 2007, ch. 391, § 9. This makes it highly unlikely that section 19 was written as plaintiff would interpret it.

For section 19 to favor plaintiff, one must conceptually separate the repayment terms of the notes and mortgages from the reality of the current enforcement action. Plaintiff argues that under the agreement the notes and mortgages do remain in effect as if there had been no demand for immediate payment in full, insofar as defendant is given the right to keep making payments pursuant to the original repayment plan. Enforcement is "discontinued" in that plaintiff has ceased actively seeking a judgment of foreclosure. In truth, however, this situation is tenuous because the defendant does remain in default and a hair's breadth away from a foreclosure judgment should he miss a payment. In this situation, the protective provisions of the notes and mortgages do *not* remain in effect as if there had been no acceleration. Plaintiff's reading of section 19 is plausible, but less natural than defendant's interpretation.

To the extent the agreement is not consistent with this opinion, it is subject to further negotiation. In light of the voluminous questionable pleadings occasioned by the defendant, the plaintiff's attorney fees are deemed reasonable.

6

This motion must be denied. Upon evidence that defendant's proffer is not in compliance with the terms of the mortgages, plaintiff is without prejudice to renew its motion for summary judgment.

The entry will be:

The plaintiff's motion for summary judgment is denied.


DATED: October 2, 2009

Donald H. Marden
Active Retired Justice

BRUCE HOCHMAN ESQ
PO BOX 15215
PORTLAND ME 04112

*P1·*

S JAMES LEVIS JR ESQ
338 MAIN STREET
SACO ME 04072