# United States Court of Appeals
## For the First Circuit

No. 10-1365

UNITED STATES OF AMERICA,

Appellee,

v.

RAMÓN DE JESÚS-VIERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. Garcia-Gregory, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Howard, Circuit Judges.

Robert Herrick for defendant-appellant.
Luke Cass, Assistant United States Attorney, with whom Nelson Pérez-Sosa, Chief, Appellate Division, and Rosa Emilia Rodriguez-Velez, United States Attorney, were on brief for appellee.

August 24, 2011

**LYNCH**, **Chief Judge**.  United States Customs and Border Patrol (CBP) officers seized over two kilograms of heroin and ninety-six kilograms of cocaine from Ramón De Jesús-Viera's vehicle during a border search conducted upon De Jesús-Viera's return to Puerto Rico from the Dominican Republic.  A jury convicted De Jesús-Viera on one count of knowingly and intentionally possessing heroin and cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and one count of knowingly and intentionally importing to the United States heroin and cocaine in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(A), (B).  The district court sentenced De Jesús-Viera to 188 months' imprisonment.

De Jesús-Viera appeals, challenging both his conviction and his sentence.  He argues the district court erred in denying his motion to suppress the evidence recovered from his vehicle, it erred when it instructed the jury on a willful blindness theory, and the evidence is insufficient to support his conviction.  He also argues the district court erred by denying his request for an offense-level reduction for playing a minor role in the criminal activity.  See U.S.S.G. § 3B1.2(b).

We affirm the conviction and the sentence.

I.

Because De Jesús-Viera questions the sufficiency of the evidence supporting his conviction, we relate the facts in the

-2-

light most favorable to the verdict.  See United States v. DeCologero, 530 F.3d 36, 47 (1st Cir. 2008).

In the early morning hours of July 13, 2007, De Jesús-Viera arrived in Mayagüez, Puerto Rico, on a car and passenger ferry from Santo Domingo, Dominican Republic.  CBP Officer Javier Ruíz-Toro was working in the port's primary inspection area at the time, and De Jesús-Viera presented him with a Puerto Rico driver's license, birth certificate, and customs declaration card.

As is customary practice for CBP Officers, Ruíz-Toro asked De Jesús-Viera questions to determine whether to permit his entry or instead refer De Jesús-Viera to secondary inspection.  In response, De Jesús-Viera stated that he had been in the Dominican Republic to visit friends for two weeks and had nothing to declare. Ruíz-Toro asked De Jesús-Viera how long he had owned his vehicle, a 1984 Chevrolet El Camino.  De Jesús-Viera replied that he had only recently purchased it.  This raised Ruíz-Toro's suspicions because, by training and experience, he knew that drug trafficking organizations often registered vehicles in a driver's name immediately before using that vehicle to import drugs.  Ruíz-Toro pressed further, inquiring as to whether De Jesús-Viera had made any repairs to the vehicle, which De Jesús-Viera denied.  During this time, De Jesús-Viera's voice was trembling, his hands and legs were shaking, he was sweating profusely, and he avoided eye contact.  De Jesús-Viera explained his demeanor by telling Ruíz-

Toro that he had a hangover, but Ruíz-Toro did not believe him. In light of De Jesús-Viera's demeanor and his vehicle's recent registration, Ruíz-Toro referred him to secondary inspection.

CBP Officer Jorge Pitre, working in the secondary inspection area, asked De Jesús-Viera about the duration and purpose of his trip to the Dominican Republic. De Jesús-Viera said he had been in the Dominican Republic for two weeks in order to show off his new car, that he had not made any repairs to his car, and that he did not have anything to declare from the Dominican Republic. Pitre noticed that De Jesús-Viera avoided eye contact and was slightly shaking during the questioning.

After questioning De Jesús-Viera, Pitre used a machine that measures the density of an object when passed across the surface of that object, a "buster," to inspect De Jesús-Viera's vehicle. The buster's readings indicated that there was a dense object beneath the floor of one part of the vehicle. Given the density readings and De Jesús-Viera's nervousness, Pitre asked CBP Officer Isidro Mercado to cross-interview De Jesús-Viera.

Mercado asked De Jesús-Viera about the purpose of his trip, the amount of money he took to and from the Dominican Republic, and whether he had made any repairs to his vehicle. De Jesús-Viera responded that he had traveled with about $3,000 "to spend . . . with girls," that he was returning with roughly $200,

and that he had not made any vehicle repairs. Mercado observed De Jesús-Viera shaking and found him to be nervous.

Officers Mercado and Pitre then visibly inspected the interior and undercarriage of De Jesús-Viera's vehicle. They opened the doors, pushed the seats forward, and saw a large speaker box mounted in the rear. When the box was removed, the felt lining underneath appeared "freshly done." Removing a portion of the felt, the officers smelled a chemical odor that suggested an adhesive agent had recently been used or the area had recently been painted. This contradicted De Jesús-Viera's claim that he had not made any repairs to the vehicle. Meanwhile, another officer inspected its undercarriage, and informed the others that "something is not right here," and that there was a bulge or compartment underneath the area of the felt lining.

CBP Officer Luis Henríquez, who was present for the inspection of the car, left and returned with a drug-sniffing dog to do a canine inspection of the vehicle. The dog searched the area and began scratching "very aggressively" at the portion of the vehicle that the officers were now focused upon, signaling there might be narcotics in that area. After obtaining permission from their superiors to do so, the officers drilled into the compartment which had been discovered on the underside of De Jesús-Viera's vehicle so as to allow a fiberoptic cable to peer inside the

compartment. It was the drilling into the undercarriage on which the motion to suppress was based.

Once the officers removed the drill bit, they noticed white powder on the bit's tip. The officers administered a field test of the substance, and it tested positive for cocaine.

After placing De Jesús-Viera in custody, the officers sawed open the hidden compartment and extracted sixty-three packages. These packages were later determined to contain a total of 2.12 kilograms of heroin and approximately 96 kilograms of cocaine. They also discovered a device with exposed wires; applying an electrical current to the wires caused the compartment to open, and reversing the wires and applying a current caused the compartment to shut. This type of device is commonly used in vehicles that have been modified specifically to transport contraband.

## II.

De Jesús-Viera was charged with one count of possessing with intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and one count of importing into the United States one kilogram or more of heroin and five kilograms or more of cocaine in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(A), (B).

On October 4, 2007, De Jesús-Viera filed a motion to suppress the narcotics evidence seized from his vehicle on the

grounds that the drilling of the vehicle was not a routine border search and that there was no reasonable suspicion to support the non-routine search.  The district court referred the motion to a magistrate judge, who originally scheduled a suppression hearing but later cancelled it.  The magistrate judge determined that "the defendant has been fully heard on his motion with the submissions made, and that an evidentiary hearing is not required," and issued a recommended ruling denying De Jesús-Viera's motion to suppress on the grounds that the drilling qualified as a routine border search.

De Jesús-Viera moved for reconsideration of the recommended ruling based on United States v. Flores-Montano, 541 U.S. 149 (2004), which he said left open the possibility that the Fourth Amendment requires that some destructive property searches at the border be supported by reasonable suspicion, and United States v. Robles, 45 F.3d 1, 5 (1st Cir. 1995), which held, without the government's taking a contrary position, that the drilling into a metal cylindrical container in that case was a non-routine search.  The magistrate judge issued a second recommended ruling on December 19, 2007, rejecting De Jesús-Viera's arguments and denying De Jesús-Viera's motion for reconsideration.  The second recommended ruling stated that any objections to it were due on January 8, 2008, but De Jesús-Viera failed to make any objections. The district court adopted the ruling on February 4, 2008, agreeing that the CBP officers' drilling of De Jesús-Viera's vehicle

-7-

qualified as a routine border search that did not require reasonable suspicion.

The jury convicted De Jesús-Viera on both counts following a four-day trial from September 22, 2008, to September 25, 2008. De Jesús-Viera filed a motion for judgment of acquittal, Fed. R. Crim. P. 29, arguing that the evidence was not sufficient to support his conviction, and a motion for a new trial, Fed. R. Crim. P. 33, arguing procedural errors. The district court denied De Jesús-Viera's motions.

A sentencing hearing was held on February 12, 2010. De Jesús-Viera argued that he was entitled to a two-level reduction in his offense level because he played a minor role in the offense. See U.S.S.G. § 3B1.2(b). The district court found De Jesús-Viera did not qualify for the two-level role adjustment, setting his offense level at 36 and yielding a guideline range of 188 to 235 months. The court imposed a sentence of 188 months for each count, to be served concurrently.

III.

A.      Denial of De Jesús-Viera's Motion to Suppress

We first reject De Jesús-Viera's challenge to the district court's denial of his motion to suppress the narcotics evidence seized from his vehicle.

By failing to object to the magistrate judge's recommended ruling, De Jesús-Viera has waived his Fourth Amendment

claim.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008).  The magistrate judge's December 19, 2007, recommended ruling explicitly advised the parties that D.P.R. Civ. R. 72(d) required that any objections be made within ten days of receiving the ruling,[1] and that failure to do so would preclude further appellate review.[2]

De Jesús-Viera also argues the denial of his suppression motion constitutes plain error.  See Fed. R. Crim. P. 52(b).  The four-part test for plain error requires that De Jesús-Viera show (1) there is an error; (2) the error is plain or obvious; (3) the error "'affected [De Jesús-Viera's] substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings;'" and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Gerhard, 615 F.3d 7, 22 (1st Cir. 2010) (alteration in original) (quoting United States v. Marcus, 130 S.

---

[1]    In 2009, 28 U.S.C. § 636(b)(1) was amended to allow parties fourteen days, not ten, to file objections to a magistrate judge's recommended ruling.  See id.  Subsequently, D.P.R. Civ. R. 72(d) was amended to also allow fourteen days for objections.

[2]    De Jesús-Viera concedes that he failed to properly object to the recommended ruling.  Nonetheless, he urges us to review the district court's denial of his suppression motion under a de novo standard of review, reasoning that his motion for reconsideration of the magistrate judge's first recommended ruling "clearly expressed his position" that the CBP officers needed reasonable suspicion to justify drilling into his vehicle.  We reject the argument.

Ct. 2159, 2164 (2010)) (internal quotation marks omitted).  He has failed to make such a showing.

The district court's denial of the suppression motion was not error at all because there was more than reasonable suspicion to search the vehicle.  The district court concluded that the drilling into the hidden compartment in the undercarriage of De Jesús-Viera's vehicle was a routine border search that did not require reasonable suspicion, see Flores-Montano, 541 U.S. 149, and distinguished our holding in Robles on its facts.  We do not decide whether the search was a routine border search.  Even assuming the drilling was non-routine, it was supported by ample reasonable suspicion.  See Robles, 45 F.3d at 5-6 (non-routine border search constitutional because supported by reasonable suspicion); id. at 5 ("We are not bound by the district court's reasoning, and will affirm if the ruling below is supported by any independently sufficient ground.").

"A finding of reasonable suspicion requires 'a particularized and objective basis for suspecting the person stopped of criminal activity,'" United States v. Espinoza, 490 F.3d 41, 47 (1st Cir. 2007) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)) (internal quotation marks omitted), which must be "grounded in specific and articulable facts," id. (quoting United States v. Hensley, 469 U.S. 221, 229 (1985)) (internal quotation marks omitted).  The record shows an escalating sequence of events

in which each step taken by the CBP officers led reasonably to the next.[3] That sequence was: (1) De Jesús-Viera was visibly nervous and avoided eye contact with each of the officers in the chain; (2) he told the officers that he had recently purchased his vehicle, a recognized indicia the vehicle may have been used for drug trafficking; (3) De Jesús-Viera gave inconsistent answers to the CBP officers when cross-interviewed, telling one officer the purpose of his trip to the Dominican Republic was to visit friends, telling a second it was to show off his car, and telling a third it was "to spend [$3000] . . . with girls;" (4) the buster scan yielded abnormal readings indicating dense objects underneath the floor of the vehicle; (5) a search of the car's interior found recent alterations or repairs, contrary to De Jesús-Viera's statement that he had not made any recent repairs; (6) an agent's view of the underside of the vehicle showed an abnormal bulge underneath the area where the alterations to the car were found; and finally, (7) a canine inspection of the vehicle indicated the likely presence of narcotics. The CBP officers had an ample basis to reasonably suspect that De Jesús-Viera was engaged in criminal

---

[3] Because the district court made no findings of fact in denying De Jesús-Viera's motion to suppress, we review the record de novo. See United States v. Robles, 45 F.3d 1, 5 (1st Cir. 1995).

Under plain error review, we may consider the entire record in assessing whether the district court's decision affected De Jesús-Viera's substantial rights, not just the facts available to the district court at the time it ruled upon the suppression motion. See United States v. Mescual-Cruz, 387 F.3d 1, 7 (1st Cir. 2004).

-11-

activity that justified drilling into the secret compartment. De Jesús-Viera's Fourth Amendment claim fails.[4]

B.      Willful Blindness Jury Instruction

De Jesús-Viera next argues the district court erred by instructing the jury that, in deciding whether De Jesús-Viera acted knowingly, the jury could "infer that the defendant had knowledge of a fact if [it found] that he deliberately closed his eyes to a fact that otherwise would have been obvious to him." Because De Jesús-Viera did not object to this instruction at trial, our review is for plain error. See Estate of Keatinge v. Biddle, 316 F.3d 7, 16 (1st Cir. 2002). There was no error.

"A willful blindness instruction is appropriate if (1) a defendant claims a lack of knowledge, (2) the facts suggest a conscious course of deliberate ignorance, and (3) the instruction,

---

[4]      We also reject De Jesús-Viera's argument that the district court erred by ruling on the motion to suppress without holding an evidentiary hearing. On appeal, De Jesús-Viera raises this argument in a cursory fashion, and it is waived. See Cortés-Rivera v. Dep't of Corr. & Rehab., 626 F.3d 21, 26 (1st Cir. 2010).
Even if it were not waived, the argument would fail. In reviewing a claim that a defendant was erroneously deprived of an evidentiary hearing, we ask whether the defendant made a sufficient threshold showing that material facts were in doubt. United States v. Vilches-Navarrete, 523 F.3d 1, 15 (1st Cir. 2008). "The district court has considerable discretion in determining the need for, and the utility of, evidentiary hearings, and we will reverse the court's denial of an evidentiary hearing in respect to a motion in a criminal case only for manifest abuse of that discretion." United States v. Allen, 573 F.3d 42, 50-51 (1st Cir. 2009) (quoting United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996)) (internal quotation marks omitted). That standard has not been met here.

taken as a whole, cannot be misunderstood as mandating an inference of knowledge." United States v. Azubike, 564 F.3d 59, 66 (1st Cir. 2009). De Jesús-Viera's defense hinged on a lack of knowledge of the drugs in his vehicle.

As an alternative to actual knowledge, the facts could be construed to suggest a conscious course of deliberate ignorance -- that the defendant heavily suspected what he was driving was a car with hidden narcotics.

As to the third element, the instruction stated:

> In order to infer knowledge, you must find that two things have been established: First, that the defendant was aware of a high probability of the existence of the drugs; second, that the defendant consciously and deliberately avoided learning of that fact. That is to say, the defendant willfully made himself blind to that fact.
> It is entirely up to you to determine whether he deliberately closed his eyes to the fact and if so, what inference, if any, should be drawn. However, it is important to bear in mind that mere negligence or mistake in failing to learn the fact is not sufficient. There must be a deliberate effort to remain ignorant of the fact.

The court's instruction did not create the risk that the jury would employ a negligence standard; the court explicitly instructed that finding De Jesús-Viera acted negligently was not enough.

Further, as discussed below, there was considerable evidence that De Jesús-Viera had actual knowledge of the illegal narcotics in his vehicle.

-13-

C.        Sufficiency of the Evidence

De Jesús-Viera argues the government failed to adequately prove that he acted "knowingly and intentionally," an essential element under 21 U.S.C. §§ 841(a)(1) or 952(a).

"[W]e must affirm the conviction if after de novo review of the evidence taken in the light most favorable to the government, we conclude that a rational factfinder could find that the government proved the essential elements of its case beyond a reasonable doubt."  United States v. Marin, 523 F.3d 24, 27 (1st Cir. 2008).

Viewed in the light most favorable to the government, the record contains ample evidence to support De Jesús-Viera's convictions.  The jury could have inferred that De Jesús-Viera acted knowingly and intentionally from testimony that the drugs were found in a car that De Jesús-Viera both owned and was driving, notwithstanding the fact the drugs were concealed in a hidden compartment.  See United States v. Barnes, 890 F.2d 545, 549 (1st Cir. 1989) ("[K]nowledge of possession may . . . be inferred by demonstrating dominion and control over the area where contraband is found."); cf. United States v. Aponte, 619 F.3d 799, 804 (8th Cir. 2010) ("[D]efendant's ownership and control over a vehicle are

sufficient to infer possession of drugs therein -- even if the drugs are concealed.").[5]

The jury also could have inferred that De Jesús-Viera knew of the presence of the illegal narcotics in his car from the sheer amount of drugs the CBP officers found. The jury heard testimony that CBP officers found 2.12 kilograms of heroin and 96 kilograms of cocaine in the car and that in July 2007, the street value of a kilogram of heroin was at least $55,000 and the street value of a kilogram of cocaine was at least $14,000. The jury could have drawn the inference that De Jesús-Viera knew that the over $1.45 million worth of drugs were in his car based on its common sense.

Testimony regarding De Jesús-Viera's nervous behavior -- his trembling voice, his shaking hands and legs, his profuse sweating, his avoiding eye contact with the CBP officers -- was also supporting evidence of guilt.

De Jesús-Viera urges that his convictions should be reversed because, he argues, the facts of his case are similar to

---

[5] De Jesús-Viera argues that knowledge that the car contained illegal drugs should not be attributed to him based on his ownership of the car because "[g]overnment witnesses acknowledged that [he] likely owned the car in name only because contraband smugglers often register a car in a third-party's name to enable the third-party to leave and enter the country." What De Jesús-Viera fails to mention is that CBP Officer Ruíz-Toro told the jury that the practice described is one characteristic of "drug trafficking organizations" specifically, not contraband smugglers generally. De Jesús-Viera's ownership of the car "in name only" is evidence that supports his conviction.

those in United States v. Pérez-Meléndez, 599 F.3d 31 (1st Cir. 2010), where "[i]n light of the specific facts of [that] case" we held that the evidence supporting a jury verdict was insufficient. Id. at 47. De Jesús-Viera is mistaken: Pérez-Meléndez is distinguishable from his case.

In Pérez-Meléndez, two defendants, commercial truck drivers, were convicted in a jury trial of aiding and abetting each other to possess and distribute cocaine. Id. at 37, 38. The defendants were the driver and passenger of a truck carrying six wrapped pallets of reams of paper in which federal agents discovered hidden forty kilograms of cocaine. Id. at 34. Although the defendants offered inconsistent statements regarding whether the truck was rented (and who rented it) or whether it was borrowed from a friend, it was not disputed that neither of the defendants owned the truck. Id. at 35, 36. The defendants had picked up the shipment of paper, which had originated in the Dominican Republic, from "an authorized company in Puerto Rico engaged in the lawful business of transporting shipments from, among other places, the Dominican Republic and which was not charged with any wrongdoing." Id. at 45. The shipping company provided the defendants "with documentation indicating (1) that the Customs and Treasury departments had provided clearances on the shipment and (2) what that shipment (supposedly) contained." Id.

Pérez-Meléndez is easily distinguished from the present case. The defendants in Pérez-Meléndez did not own the truck or the reams of paper in which the drugs were hidden; De Jesús-Viera owned the car in which CBP agents found the cocaine and heroin. The drugs in Pérez-Meléndez were found hidden amongst a shipment the defendants were paid by a legitimate freight company to pick up and deliver; De Jesús-Viera was engaged in no such seemingly legitimate activity and the drugs were found in his personal vehicle. The court in Pérez-Meléndez observed that the defendants drove "a common vehicle unequipped with weaponry or sophisticated technology," id. at 45, and that there was "no evidence that [defendants] themselves resisted or otherwise tried to conceal the true nature of the shipment," id. at 46; here, De Jesús-Viera's car had been modified to include a secret compartment that operated electronically to conceal contraband.

D.        Offense Level Reduction for Minor Role

Finally, De Jesús-Viera argues the district court erred in denying his request for a two-level downward adjustment in his sentence based on his minor role in the offense. See U.S.S.G. § 3B1.2(b). The defendant has not satisfied his burden of showing that finding is clearly erroneous. See United States v. Bravo, 489 F.3d 1, 11 (1st Cir. 2007).

The minor role guideline, U.S.S.G. § 3B1.2(b), "is not applicable unless more than one participant was involved in the

-17-

offense," see U.S.S.G. § 3B1.2 cmt. n.2, and De Jesús-Viera had the burden of demonstrating that there were other, more culpable participants in the offense of conviction, see United States v. Rosa-Carino, 615 F.3d 75, 81 (1st Cir. 2010). The district court based its finding largely on the fact that De Jesús-Viera had failed to meet that burden: he offered no evidence that any other individuals participated in the criminal activity of conviction.

De Jesús-Viera's only challenge to the court's determination is that "the record could only support a finding that [he] was an expendable cog in a sophisticated trafficking operation." But it was not clearly erroneous for the district court to reject that unsupported assertion.

## IV.

The judgment of the district court is affirmed.