# United States Court of Appeals
## For the First Circuit

No. 10-1176

UNITED STATES,

Appellee,

v.

ALEX CURET, a/k/a/ A.J.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Karen A. Pickett, with whom Donnelly, Conroy & Gelhaar, LLP
was on brief, for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

January 11, 2012

**LYNCH**, **Chief Judge**.  Alex Curet appeals his below-guidelines career offender sentence of 174 months after a plea of guilty to three counts of conspiracy to distribute cocaine base and distribution of cocaine base within 1,000 feet of a school.  His appeal raises an issue that we have not resolved before: whether a Massachusetts state-court "guilty-filed" disposition qualifies as a "conviction" for purposes of the career offender guidelines, U.S.S.G. § 4B1.1(a)(3).  We hold that it does, and that federal law controls the issue.  We affirm Curet's sentence.

I.

Alex Curet and a co-defendant were indicted on December 12, 2007.  Count one charged that, beginning on September 25, 2007, and continuing until at least October 3, 2007, Curet conspired with others to distribute at least five grams of cocaine base in Boston, in violation of 21 U.S.C. § 841(a)(1).  Two instances of distribution, on September 25 and October 3, each involving at least five grams of cocaine base, were within 1,000 feet of a school, providing the basis for counts two and three.  21 U.S.C. §§ 841(b)(1)(B)(iii), 860.

On December 13, 2007, the government filed an information to establish that Curet had a prior state felony conviction in April 2005 for possession of a class D substance with intent to distribute and of a drug violation near a school, in violation of Mass. Gen. Laws ch. 94C, §§ 32C, 32J.  This § 851 information, see

-2-

21 U.S.C. § 851, subjected Curet to a mandatory minimum sentence of ten years.[1]

Curet initially pled not guilty to all three counts of the indictment. On October 27, 2008, at a change of plea hearing, Curet pled guilty to all three counts. Sentencing was initially scheduled for January 29, 2009, but was postponed several times.

On December 30, 2008, the initial pre-sentence report (PSR) found that Curet (A) had a base offense level of 24, because he was responsible for distribution of 13.95 grams of cocaine base, and (B) was a career offender under the guidelines, because he had at least two prior felony convictions: (1) a 2003 state-court "youthful offender" adjudication of distribution of class B substances and distribution of a controlled substance in a school zone; (2) a 2003 state-court "guilty-filed" disposition for resisting arrest, which took place when Curet was seventeen years

---

[1] Under the version of 21 U.S.C. § 841 then in effect, an individual who was convicted of violation of § 841(a) with respect to "5 grams or more of a mixture or substance . . . which contains cocaine base," 21 U.S.C. § 841(b)(1)(B)(iii) (2008), and who committed the § 841(a) violation "after a prior conviction for a felony drug offense has become final," was subject to a mandatory sentence of imprisonment of not "less than 10 years," id. § 841(b)(1)(B) (2008). In the absence of such a prior felony conviction, the statute provided a five-year mandatory minimum. Id.

The prior conviction required under § 841 for imposition of the ten-year mandatory minimum may only be established if "before trial, or before entry of a plea of guilty, the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon." Id. § 851(a)(1). Various other requirements exist, and the information may be challenged by the defendant. See id. § 851.

old; and (3) the April 2005 state-court conviction for distribution of class D substances that was outlined in the § 851 information. This led to a total offense level of 35, and a guideline imprisonment range of 292 to 365 months.

On January 23, 2009, Curet pro se filed a letter with the court challenging the § 851 information and requesting a hearing before sentencing. On February 4, 2009, Curet's attorney filed a notice of intent to challenge the § 851 information, on the basis that the 2005 state-court conviction was unconstitutional.

The government moved to strike the notice of intent the same day, for failure to satisfy the statutory requirement that "[a] person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information." Id. § 851(c)(2).

On February 13, 2009, Curet objected to the PSR, challenging the career-offender designation, but solely on the basis that the 2005 drug conviction was constitutionally invalid.

The next day, Curet challenged the § 851 information, arguing that the April 2005 felony drug conviction was constitutionally infirm on the ground of ineffective assistance of counsel and because his guilty plea to that offense was not knowing and voluntary. The government's response contested all of Curet's

-4-

claims and argued that it was clear from the state-court plea colloquy that Curet's claims were without merit.

On December 4, 2009, the government filed its sentencing memorandum, recommending a below-guideline sentence of 174 months. On January 19, 2010, the government filed a supplemental response regarding the § 851 memorandum, stating that Curet's constitutional claims regarding the April 2005 drug conviction had been heard and resolved against him in the state district court which had accepted the plea and imposed the sentence.

Sentencing took place on February 2, 2010. At the outset of the hearing, the prosecutor explained that he had discussed the § 851 information issue with Curet's counsel, and that because the Massachusetts state court had rejected Curet's claims, their view was that "the challenge to the 851 here is moot, obviously subject to if he were able to appeal the state court judge's denial of the motion to vacate."[2] The district court twice asked Curet's counsel whether he agreed, and counsel responded with "I agree with that statement." Turning to Curet's objections to the PSR, the district court asked whether the objection to Curet's career offender status, which was based on the same 2005 conviction as was at issue in the § 851 information, was "waived by virtue of the earlier"

_____

[2] Curet does not claim that he has appealed the state court's denial of his motion to vacate or otherwise attempted to vacate the 2005 conviction subsequent to his sentencing hearing in this case.

discussion, and Curet's attorney agreed that the objection was waived.

The district court found, as had the PSR, that after consideration of the career offender provisions, Curet was subject to a total career offender offense level of 35. Curet's attorney agreed with these calculations.

The court then found that Curet had three state career offender predicates: the 2003 youthful offender adjudication, the 2003 resisting arrest guilty-filed disposition, and the 2005 drug conviction. Curet's attorney did not object to the counting of all three of these convictions as career offender predicates. The court then found, as had the PSR, that Curet's guideline range was 292 to 365 months, to which there was again no objection.

Counsel for the government and for Curet made their sentencing recommendations to the court, and then Curet spoke, explaining that he had delayed in pleading guilty because he was hoping for a favorable plea agreement, and "was still kind of confused about this whole career offender and 851 situation." He said that he had not meant to plead guilty to the intent to distribute charge in 2005, but rather simply to possession, and that he didn't understand why that conviction was deemed a prior drug conviction, as it should have been vacated.

The district court then sentenced Curet to the 174 months recommended by the government, varying downward from the guidelines. Curet timely appealed.

-6-

II.

Curet raises three challenges to his sentence: (1) that the district court committed reversible error in failing to conduct a hearing and colloquy regarding the 21 U.S.C. § 851 information, (2) that he was improperly classified as a career offender under the federal sentencing guidelines, and (3) that the provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, and the attendant modifications of the guidelines, should retroactively apply to him. Each challenge fails.

A.      The 21 U.S.C. § 851 Information as to the April 2005 State Drug Conviction

Curet argues that the district court was required to conduct a hearing pursuant to 21 U.S.C. § 851(c) as to the April 2005 state conviction, notwithstanding his attorney's representation to the court that the issue was moot given the state court's refusal to vacate his conviction. This error, he argues, warrants reversal. Curet also argues that even if such a hearing was not required, the district court was required to conduct the colloquy prescribed by 21 U.S.C. § 851(b). Both claims fail. Curet expressly waived his right to a hearing, and did not expressly request a colloquy. While the district court should have conducted a colloquy, Curet is unable to demonstrate plain error and thus this lapse does not provide grounds for altering Curet's sentence.

Section 851 imposes a set of "mandatory prerequisites to obtaining a punishment based on the fact of a prior conviction." Carachuri-Rosendo v. Holder, 130 S. Ct. 2577, 2582 (2010). If a prosecutor intends to seek "increased punishment [of a defendant] by reason of one or more prior convictions," the prosecutor must, before trial or entry of a plea of guilty, file an information with the court "stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). If such an information is filed, the statute imposes an obligation on the court to conduct a colloquy with the defendant:

> If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

Id. § 851(b). One purpose of the colloquy is for the court to provide the required information to the defendant.

After the colloquy, "[i]f the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information." Id. § 851(c)(1). If such a response is filed, the court "shall hold a hearing to determine any issues raised by the response which would except the person from increased

-8-

punishment." Id. Only convictions that occurred within a five-year window preceding the filing of the information may be challenged. Id. § 851(e). If, after a hearing, "the court determines that the person has not been convicted as alleged in the information, [or] that a conviction alleged in the information is invalid," the court may not impose an increased punishment based on that prior conviction. Id. § 851(d)(2). However, if the defendant "files no response to the information, or if the court determines, after hearing, that the person is subject to increased punishment by reason of prior convictions," the prior conviction may be used to support an increased punishment. Id. § 851(d)(1).

In this case, Curet initially filed a response under § 851(c), challenging the constitutionality of his April 2005 conviction. However, at sentencing, Curet's attorney explicitly waived this claim, in light of the Massachusetts state court's refusal to vacate that conviction.[3]

As a result, the court was not required to "hold a hearing to determine any issues raised by the response," as

---

[3] Both parties as well as the district court described the state court's refusal to vacate the 2005 conviction as rendering "moot" the § 851 challenge. We do not adopt that characterization. It is not entirely clear whether the term was intended to refer to the legal effects of the state-court decision on the federal-court examination of the conviction under § 851, or, instead, used in a more general sense to indicate that the challenge to the conviction was no longer worth pursuing. However, Curet's attorney ultimately agreed that the § 851 challenge was "waived." The state-court decision would not of itself have precluded all challenges to the information under § 851.

required by § 851(c)(1), because the § 851 response had been affirmatively withdrawn and waived.[4] Curet's argument necessarily rests upon a claim that the court's failure to conduct the colloquy under § 851(b) constitutes reversible error.

We review failure to conduct a § 851(b) colloquy for harmless error where there is an objection, and for plain error in the absence of an objection. United States v. Dickerson, 514 F.3d 60, 64-65 (1st Cir. 2008). Here, there was no objection. Curet's attorney made no objection. We do not view Curet's statements at sentencing as requesting such a colloquy, but rather as explaining the "reason why [he] took so long to plead guilty." This reading is supported by the context of his attorney's waiver of the challenge to the information. As a result, review is for plain error.

To demonstrate plain error, Curet must show that "(1) there is an error; (2) the error is plain or obvious; (3) the error 'affected [Curet's] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings;' and (4) 'the error seriously affect[s] the fairness, integrity or

---

[4] Nothing in § 851 indicates that a defendant's written response to an information, and a corresponding request for a hearing under § 851(c), cannot be waived. Indeed, the fact that the court must impose sentence upon the defendant "[i]f the [defendant] files no response to the information" makes clear that a court has no independent obligation to conduct a hearing under § 851(c) in the absence of a response to the information. See 21 U.S.C. § 851(d)(1).

-10-

public reputation of judicial proceedings.'" United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011) (second alteration in original) (quoting United States v. Gerhard, 615 F.3d 7, 22 (1st Cir. 2010)) (internal quotation marks omitted).

As a matter of statutory construction, the statute itself does not make a violation of § 851(b) grounds to decline to impose an enhanced sentence. In contrast to § 851(a)(1), subsection (b) does not by its terms state that an enhanced sentence cannot be imposed in the absence of a colloquy. See 21 U.S.C. § 851(a)(1) ("No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions" unless an appropriate information is filed.). Moreover, § 851(d)(1) makes clear that "[i]f the [defendant] files no response to the information . . . the court shall proceed to impose sentence upon him as provided by this part," with no mention of the court's compliance with § 851(b) as a necessary prerequisite. Id. § 851(d)(1).

We have held that "[t]he mere failure to conduct a § 851(b) colloquy is harmless error. . . . [A]ny reversible error could only stem from specific problems related to the predicate convictions." United States v. Henry, 519 F.3d 68, 74 (1st Cir. 2008). Curet does not raise any specific problems related to his predicate conviction on appeal and so the argument fails.

-11-

Moreover, a primary purpose of § 851(b) is "to provide notice of the convictions on which the government sought to rely for the purposes of the sentencing enhancement." Henry, 519 F.3d at 75; see also United States v. Espinal, 634 F.3d 655, 665 (2d Cir. 2011) ("The purpose of § 851(b) is . . . to ensure defendants are fully aware of their rights." (quoting United States v. Baugham, 613 F.3d 291, 296 (D.C. Cir. 2010)) (internal quotation marks omitted)). This purpose is made clear by the interplay of § 851(b) and (c). Section 851(b) provides that at the colloquy, the defendant may "den[y] that he has been previously convicted as alleged in the information." 21 U.S.C. § 851(b). Section 851(c)(1) begins by providing that "[i]f the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information." Id. § 851(c)(1). Accordingly, the typical basis for finding reversible error on the basis of a § 851(b) violation is that such a violation prevented a defendant from filing a response under § 851(c) which may have been successful. See Espinal, 634 F.3d at 666 (finding that failure to conduct a § 851(b) colloquy was not harmless error in part because had such a colloquy been held, "it is at least possible that . . . [the defendant] would have filed a written response"); United States v. Ruiz-Castro, 92 F.3d 1519, 1536 (10th Cir. 1996) (finding that failure to conduct a § 851(b) colloquy was not harmless error where

the court "cannot conclude either that [the defendant] appreciated his ability to challenge the prior conviction for sentencing purposes or that any challenge to the prior conviction would have been futile"), overruled on other grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006).

Here, the fact that Curet had filed a response under § 851(c), but later chose to withdraw it, "demonstrate[s] that [Curet] fully understood which convictions were referenced in the Information." Henry, 519 F.3d at 75.

While there was no plain error here, the district court did have an obligation to conduct an inquiry under § 851(b), as defendants are entitled to the colloquy regardless of whether the § 851(c) objection was waived. See Carachuri-Rosen, 130 S. Ct. at 2582 & n.6, 2587 (characterizing the court's obligation to conduct an inquiry under § 851(b) as "mandatory"). The district court's failure to conduct such an inquiry was, as the government concedes, error, but it does not provide grounds for reversal here.

B.      Career Offender Classification

The legal interpretation of the guidelines at issue here is reviewed de novo. United States v. Vázquez-Botet, 532 F.3d 37, 65 (1st Cir. 2008).

To be deemed a career offender, a defendant must, among other requirements, have "at least two prior felony convictions of either a crime of violence or a controlled substance offense."

U.S.S.G. § 4B1.1(a)(3). Curet argues that he did not have two valid predicate convictions, and was therefore improperly classified as a career offender under the sentencing guidelines.

Curet's career offender classification was originally based on three prior convictions: (1) the 2005 state-court conviction for distribution of class D substances that was outlined in the § 851 information, (2) a 2003 state-court "youthful offender" adjudication of distribution of class B substances and distribution of controlled substance in a school zone, and (3) a 2003 state-court "guilty-filed" disposition for resisting arrest, which took place when he was age seventeen.

To the extent that Curet raises any challenge to the use of the 2005 state conviction as a predicate offense, that challenge is based on the § 851 argument, which was rejected above.[5] As a result, that conviction is a valid predicate offense.

Curet's claim that the 2003 youthful offender adjudication is not a valid predicate offense is correct, as the government concedes, under our decision in United States v. McGhee, 651 F.3d 153 (1st Cir. 2011). McGhee overruled prior circuit

_____

[5] Because Curet's challenge to the § 851 information fails on its own terms, we need not address whether a successful challenge would result in the challenged prior conviction no longer qualifying as a career offender predicate. Section 851, by its own terms, applies only to sentencing "as provided by this part." 21 U.S.C. § 851(d)(1)-(2). We have held that § 851 is triggered only by enhancements to defendants' statutory minimum or maximum penalties under that part, and not to increases in defendants' guidelines ranges based on the fact of prior convictions. United States v. Sanchez, 917 F.2d 607, 616 (1st Cir. 1990).

-14-

precedent, on which the district court relied, and held that Massachusetts "youthful offender" adjudications are not career offender predicates, because such adjudications are not classified as adult convictions under state law. Id. at 158.

As a result, the validity of Curet's career offender classification turns on whether his 2003 guilty-filed disposition is a valid career offender predicate. Curet raises two arguments as to why it is not a valid predicate. First, Curet contends that under McGhee and the relevant language of the guidelines, state law governs whether the disposition is a conviction within the meaning of the guidelines. Curet reasons that because Massachusetts does not consider guilty-filed dispositions to be convictions, the disposition may not be deemed a conviction for purposes of the guidelines. Second, Curet argues that, even if federal law governs whether the guilty-filed disposition is a conviction, the relevant portions of the guidelines indicate that such a disposition is not a conviction.

Both of Curet's arguments fail; the district court did not err in counting Curet's guilty-filed disposition as a career offender predicate conviction under the guidelines.[6]

We explain the nature of Curet's guilty-filed disposition under Massachusetts law.

---

[6] We do not address the government's contention that Curet waived any challenge to his career offender status because he agreed, at the sentencing hearing, with the district court's conclusion that he was a career offender.

-15-

1.  Massachusetts Guilty-Filed Dispositions

The effect of a guilty-filed disposition in Massachusetts is to suspend sentencing of the defendant; such a disposition occurs after either a verdict or plea establishing the defendant's guilt. The "seminal" state decision explains:

> It has long been a common practice in this Commonwealth, after verdict of guilty in a criminal case, when the court is satisfied that, by reason of extenuating circumstances, or of the pendency of a question of law in a like case before a higher court, or other sufficient cause, public justice does not require an immediate sentence, to order, with the consent of the defendant and of the attorney for the Commonwealth, and upon such terms as the court in its discretion may impose, that the indictment be laid on file . . . .

Commonwealth v. Simmons, 863 N.E.2d 549, 555 (Mass. 2007) (omission in original) (quoting Commonwealth v. Dowdican's Bail, 115 Mass. 133, 136 (1874)) (internal quotation marks omitted). While Dowdican's Bail refers to guilty verdicts, the procedure often occurs in the context of guilty pleas. See, e.g., Commonwealth v. Stroyny, 760 N.E.2d 1201, 1205 n.1 (Mass. 2002) ("Those guilty pleas were placed on file."); MacDonnel v. Commonwealth, 230 N.E.2d 821, 822 (Mass. 1967) ("[H]e pleaded guilty and the complaint was placed on file."). Both the Commonwealth, Commonwealth v. Powell, 901 N.E.2d 686, 693 (Mass. 2009), and the defendant, Simmons, 863 N.E.2d at 559, must consent to placing a case on file. There is some language suggesting that Massachusetts law does not regard

guilty-filed dispositions as convictions because, under state law, "a judgment of conviction does not enter unless sentence is imposed," and placing a case "on file," by definition, means that a sentence is not imposed at that point. Simmons, 863 N.E.2d at 551 n.2. We need not decide this question.

The practice of placing cases on file has been explained as "a predecessor to modern probation," because it "allow[s] the would-be sentencing judge discretion in circumstances adjudged to be unduly harsh." Id. at 554-55. When a guilty-filed disposition occurs, "the court retains the ability, at any time, to remove the indictment from the file," and to sentence the defendant. Id. at 557. In its most recent decision addressing this practice, the Supreme Judicial Court (SJC) explained that "the purpose of placing a case 'on file' is to suspend sentencing indefinitely, not to prevent a guilty finding from entering on the record." Powell, 901 N.E.2d at 693 (emphasis added) (citation omitted). The SJC reasoned that where a guilty plea was entered, and the judge said she had placed the case on file but declined to enter a guilty finding, the case was, in fact, not placed "on file," but rather the judge's disposition constituted a continuance without a finding.[7] Id.

_____

[7] There are a few instances where indictments have been placed "on file" before any admission of guilt has taken place, see Commonwealth v. Jones, 287 N.E.2d 599, 600 n.1 (Mass. 1972) ("Count 2 of the indictment was not tried but was placed on file with a plea of not guilty."); Commonwealth v. Bishop, No. 06-P-215, 2008 WL 2064665, at *1 (Mass. App. Ct. May 16, 2008) ("[T]he jury

-17-

In this case, the PSR clearly states that the disposition was "Guilty, Filed," and that was not challenged. Curet now asserts that "there is no evidence in the record that Mr. Curet in fact pleaded guilty or nolo contendere," but there was no objection to the PSR's description of the charge of resisting arrest as "Guilty, Filed."[8]

The PSR also makes clear that Curet's guilty-filed disposition took place in the Roxbury District Court. The government asserts, and Curet concedes, that the fact that Curet was proceeded against in district court means that he was proceeded against as an adult, even though he was seventeen at the time of the offense. See Mass. Gen. Laws ch. 218, § 1 (establishing the Roxbury division of the Boston municipal court, and providing that "[c]ases of delinquent children under" Mass. Gen. Laws ch. 119, §§ 52-84, which govern youthful offenders, "are excepted from the jurisdiction" of that court, and instead the juvenile court located in the city of Boston has jurisdiction); see also 1997 Mass. Acts ch. 208, § 1 (abolishing the jurisdiction of the district court

returned a verdict of not guilty, after which the trial judge placed the charge on file."), although this practice is questionable after Commonwealth v. Powell, 901 N.E.2d 686 (Mass. 2009), which would seem to require such a disposition to be treated as a continuance without a finding.

[8] Curet did object to the inclusion of the guilty-filed disposition in the PSR "to the extent that it fails to reflect that Count 1 (Possession of Class D) was dismissed, and that the guilty-filed disposition was for the charge of resisting arrest (Count 2)," and the PSR was corrected to reflect this fact.

-18-

juvenile sessions as of the date the juvenile court for each jurisdiction becomes operational, or January 1, 1999, "whichever shall first occur").  Against this background, we turn to the federal question of the meaning of "conviction."

2.    The Claim that State Law Controls

Curet's first argument is that state law controls the determination of whether a disposition is an "adult conviction" within the meaning of the guidelines.  Curet's argument hinges upon the application note defining a "prior felony conviction":

> "Prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. <u>A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted</u> (<u>e.g.</u>, a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).

U.S.S.G. § 4B1.2 cmt. n.1 (emphasis added).  Curet argues that under the language of this application note, in order for a conviction for an offense committed under the age of eighteen to be an adult conviction, it must be "classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted."  Curet argues that because Massachusetts law does not

-19-

define guilty-filed dispositions as convictions, his guilty-filed disposition is not a conviction within the meaning of the guidelines.

This argument fails. As a textual matter, the application note itself presupposes that there is an independent, federal definition of the term conviction, and the purpose of looking to the law of the jurisdiction of conviction is simply to determine whether the conviction is <u>adult</u> in nature.

There is no dispute here that under state law, Curet was treated as an adult. The note, which is addressed to that issue, does not assist his argument that state law governs what is a conviction. The application note states that "[a] <u>conviction</u> for an offense committed prior to age eighteen <u>is an adult conviction if</u> it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." <u>Id.</u> (emphasis added). The plain language makes clear that this application note provides that the law of the jurisdiction of conviction only governs in determining whether "[a] conviction . . . is an adult conviction," not in determining whether there is a conviction in the first place.[9]

_____

[9] This language is distinct from that of the Armed Career Criminal Act (ACCA). The ACCA, unlike the guidelines, mandates that "[w]hat constitutes a conviction of such crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). It is for this reason that Curet's reliance on <u>United States</u> v. <u>Carey</u>, 716 F. Supp. 2d 56 (D. Me. 2010), is misplaced. There, the court held that a guilty-filed disposition was not a conviction for purposes

-20-

The guidelines provide detailed guidance on what constitutes a "conviction." Application note 3 provides that "[t]he provisions of § 4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under § 4B1.1." Id. § 4B1.2 cmt. n.3. This application note "directs that 'convictions' of a certain type be counted, and other guidelines and commentary which elaborate upon the events to be counted essentially define that which is a conviction." United States v. Pierce, 60 F.3d 886, 892-93 (1st Cir. 1995).

Second, Curet's reading is undermined by the remainder of the application note. The sentence immediately prior to the sentence Curet relies on provides that "[a] conviction for an offense committed at age eighteen or older is an adult conviction," with no reference to state law. U.S.S.G. § 4B1.2 cmt. n.1. This sentence reinforces that the question of what constitutes a "conviction" is separate from, and logically prior to, the question of whether such a conviction is an "adult" conviction.

Moreover, interpreting the guidelines in the manner Curet advocates would result in an inconsistent definition of conviction

---

of determining whether an individual is an armed career criminal under the ACCA. Id. at 66. Carey reached this conclusion based on the fact that Massachusetts courts do not denominate guilty-filed dispositions "convictions." Id. at 65-66. We do not comment on whether Carey was correctly decided, but even assuming it was, the ACCA language at issue in Carey differs from the language of the guidelines at issue here.

-21-

within this application note. State law would govern whether a particular disposition of a case constitutes a "conviction" for those under the age of eighteen, but the guidelines would determine whether that disposition is a "conviction" for those over eighteen. We see no reason why the guidelines would take such an inconsistent approach regarding what constitutes a conviction, and do not read them that way.

Third, our case law holds that "for purposes of the career offender provisions, whether or not a state disposition constitutes a 'conviction' is determined by reference to federal law and the Guidelines," not state law. United States v. Lindia, 82 F.3d 1154, 1163 (1st Cir. 1996). While Lindia did not address the particular language that Curet relies upon, it does illustrate that typically federal law governs the matter.

Our decision in McGhee is not to the contrary. There, we addressed the question of whether a Massachusetts "youthful offender" conviction of someone under the age of eighteen was an "adult conviction" under the guidelines. 651 F.3d at 156. At issue in McGhee was not the definition of "conviction," but rather the question of "whether the conviction is 'classified' as an adult offense 'under the laws of the jurisdiction' of conviction." 651 F.3d at 157 (quoting U.S.S.G. § 4B1.2 cmt. n.1). In McGhee, there was no dispute about whether the youthful offender adjudication was a conviction; the dispute focused on whether it was an adult

-22-

conviction.  McGhee accordingly held that state law is relevant to determining whether a conviction is an adult conviction, not whether it is a conviction.

    3.    <u>Curet's Argument that the Guidelines Do Not Deem Guilty-Filed Dispositions to Be Convictions</u>

Curet argues that, even if federal law under the guidelines governs what constitutes a conviction, the relevant guideline provisions require that his guilty-filed disposition not be deemed a "conviction," and thus may not serve as a career offender predicate.  This belated argument also fails.[10]

The career offender guidelines provide that the provisions of U.S.S.G. § 4A1.2 apply to the counting of convictions for career offender purposes.  U.S.S.G. § 4B1.2 cmt. n.3.  Curet's argument relies on § 4A1.2(d).  This section is entitled "Offenses Committed Prior to Age Eighteen," and provides, in full:

> (1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under §4A1.1(a) for each such sentence.
>
> (2) In any other case,
>
> > (A) add 2 points under §4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if

---

[10]   The argument is arguably waived, as it was not made until Curet's response to a 28(j) letter.  This argument was not influenced by McGhee or any other intervening authority, and could -- and should -- have been made in the initial brief.  Curet's briefing only argued that state law controls whether a guilty-filed disposition constitutes a conviction.  Nevertheless, since we reject the argument on its own terms, we bypass the question of waiver.

> the defendant was released from such confinement within five years of his commencement of the instant offense;
>
> (B) add 1 point under §4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in (A).

Id. § 4A1.2(d).

Curet argues that subsection (2)(B) is the only provision that could apply to his guilty-filed disposition, and that because there was no "sentence imposed" as a result of such disposition, subsection (2)(B) does not apply, and the guilty-filed disposition is not a conviction. Curet also points to the application note interpreting this section, which explains that "for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted." Id. § 4A1.2 cmt. n.7.

We do not need to address the merits of Curet's interpretation of § 4A1.2(d) and the application note. Curet's argument assumes as its premise that § 4A1.2(d) governs all offenses committed prior to age eighteen. This premise is incorrect, and instead a separate subsection requires treating the guilty-filed disposition as a conviction.

Section 4A1.2(f), entitled "Diversionary Dispositions" provides, in full:

> Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under §4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.

Id. § 4A1.2(f).

The final portion of this provision undermines Curet's premise that only subsection (d) applies to offenses committed prior to age eighteen: if that were so, there would be no need for the language "except that diversion from juvenile court is not counted." Subsection (f) thus may apply to offenses committed prior to the age of eighteen, so long as its other requirements are satisfied. See United States v. Fraser 388 F.3d 371, 375 (1st Cir. 2004) (per curiam) (finding a disposition that occurred prior to age eighteen was a countable diversionary disposition under § 4A1.2(f)); United States v. DiPina, 230 F.3d 477, 482-83 (1st Cir. 2000) (assessing whether certain "juvenile dispositions" were "diversionary within the meaning of § 4A1.2(f)").

The question is whether the guilty-filed disposition is (1) "[a] diversionary disposition" (2) "resulting from a finding or

-25-

admission of guilt."[11]  We hold that the guilty-filed disposition in this case is a diversionary disposition within the meaning of this subsection.

Curet, correctly, does not dispute that the guilty-filed disposition is "diversionary" in nature.  Diversionary dispositions involve circumstances where "either the adjudication or the sentence was deferred in some way," DiPina, 230 F.3d at 483, as is the case here.

Guilty-filed dispositions also involve "a finding or admission of guilt" within the meaning of the guidelines.  The application note to the diversionary disposition provision explains that the diversionary disposition must "involve[] a judicial determination of guilt or an admission of guilt in open court." U.S.S.G. § 4A1.2 cmt. n.9.  The existence of "a guilt-establishing event . . . , and not the formal entry of an adjudicatory judgment, determines whether and when there has been a countable 'conviction.'"  Pierce, 60 F.3d at 892.  This is so because subsection (f), by its own terms, provides that a diversionary disposition with a finding or admission of guilt is a conviction

---

[11] We do not need to address whether the requirement of subsection (d)(2)(B) that, for offenses committed before the age of eighteen, the sentence must have been imposed within five years of the defendant's commencement of the instant offense, applies to diversionary dispositions that occur before the age of eighteen and that are not diversions from juvenile court.  Here, the defendant's guilty-filed disposition took place in October 2003, and the instant offense's conduct began in September 2007, well within the five-year period.

under the guidelines "even if a conviction is not formally entered." U.S.S.G. § 4A1.2(f); see also United States v. Martinez-Melgar, 591 F.3d 733, 737 (4th Cir. 2010) (rejecting defendant's argument that "a qualifying prior sentence requires formal entry of a plea or of a judgment of conviction" based on the plain meaning of this section).

The nature of a guilty-filed disposition under Massachusetts law means there has been "a guilt-establishing event" within the meaning of U.S.S.G. § 4A1.2(f). It means that there has either been a verdict or a plea of guilty in the case. Moreover, the SJC has made clear that "the purpose of placing a case 'on file' is to suspend sentencing indefinitely, not to prevent a guilty finding from entering on the record." Powell, 901 N.E.2d at 693 (citation omitted).

Our holding that guilty-filed dispositions constitute diversionary dispositions within the meaning of the guidelines accords with our holdings in prior cases. See Griffiths v. INS, 243 F.3d 45, 52-54 (1st Cir. 2001) (holding that a guilty-filed disposition was a "conviction" for purposes of the Immigration and Nationality Act); United States v. Morillo, 178 F.3d 18, 21 (1st Cir. 1999) (holding that a Massachusetts state-court "continuance without a finding" amounts to a diversionary disposition under § 4A1.2(f)).

As said, the guilty-filed disposition procedure in Massachusetts is "a predecessor to modern probation." Simmons, 863 N.E.2d at 554-55. It allows for the court to abstain from imposing a sentence against a defendant if both parties consent and the court finds such a result consistent with the interests of justice. This disposition falls squarely within the purpose of the diversionary disposition provision. See U.S.S.G. § 4A1.2 cmt. n.9.

Because the guilty-filed disposition was a diversionary disposition, it must be "counted as a sentence under § 4A1.1(c)." Id. § 4A1.2(f). Because it counts as a sentence under that subsection, it also counts as a "conviction" for career offender purposes, pursuant to U.S.S.G. § 4B1.2 cmt. n.3. This conviction is also an "adult conviction" within the meaning of the guidelines, as Curet was expressly proceeded against as an adult under state law, as is discussed above. The 2003 guilty-filed disposition is a valid prior conviction for career offender purposes. In conjunction with Curet's 2005 conviction, Curet has two valid career offender predicates, and the district court did not err in finding that Curet was a career offender.[12]

---

[12] Curet also argues that his resisting arrest disposition is not a "crime of violence" within the meaning of the guidelines and thus may not serve as a career offender predicate. See U.S.S.G. § 4B1.1. This argument fails. We have previously held that resisting arrest is a crime of violence. See United States v. Weekes, 611 F.3d 68, 72-73 (1st Cir. 2010), cert. denied, 131 S. Ct. 3021 (2011). Nothing in Sykes v. United States, 131 S. Ct. 2267 (2011), which held that an Indiana conviction for felony vehicle flight is a violent felony for purposes of the Armed Career Criminal Act, changes this result.

C.    Retroactive Application of the Fair Sentencing Act and the Sentencing Guidelines Amendment

Curet's final claim is that the Fair Sentencing Act of 2010 (FSA), Pub. L. No. 111-220, 124 Stat. 2372, and/or the amendments to the sentencing guidelines implementing that Act, should be retroactively applied to him. This claim fails.

Curet was sentenced on February 2, 2010; the relevant quantity of cocaine base was 13.95 grams. At the time he was sentenced, defendants were subject to a mandatory minimum of five years for "5 grams or more of a mixture or substance . . . which contains cocaine base." 21 U.S.C. § 841(b)(1)(B)(iii) (2008). Defendants who committed such a violation after a prior conviction for a felony drug offense were subject to a ten-year mandatory minimum. Id. § 841(b)(1)(B) (2008). Under the FSA, 13.95 grams would not subject a defendant to a mandatory minimum: 28 grams or more are required for a five-year mandatory minimum. 21 U.S.C. § 841(b)(1)(B)(iii)(2011); see also Pub. L. No. 111-220, § 2(a)(2), 124 Stat. at 2372.

However, we have held that the FSA does not apply to individuals who were sentenced before the FSA was signed into law on August 3, 2010. United States v. Goncalves, 642 F.3d 245, 252-55 (1st Cir. 2011), cert. denied, 80 U.S.L.W. 3298, 2011 WL 4915316

-29-

(U.S. Nov. 14, 2011).  Here, Curet's sentencing took place before the FSA became effective, and so the FSA does not apply.[13]

Curet also makes an argument based on the amendment to the federal sentencing guidelines in the wake of the FSA.  The FSA provided the United States Sentencing Commission with emergency authority to make conforming amendments to the sentencing guidelines that the Commission determined were necessary.  Pub. L. 111-220, § 8, 124 Stat. at 2374.  On October 27, 2010, the Sentencing Commission promulgated a temporary emergency amendment. 75 Fed. Reg. 66,188 (Oct. 27, 2010).  Among other changes, this amendment altered the drug quantity tables of the guidelines, located in § 2D1.1 and § 2D2.1, increasing the required quantity to be subject to each base offense level in a manner proportionate to the statutory change to the mandatory minimums effectuated by the FSA.  75 Fed. Reg. at 66,191.  These changes were re-promulgated as permanent amendments to the guidelines on May 3, 2011.  76 Fed. Reg. 24,960, 24,963 (May 3, 2011).   On July 13, 2011, the Commission announced that it had decided to make the amendment to the drug quantity tables retroactive.  76 Fed. Reg. 41,332, 41,333 (July 13, 2011).  This took effect on November 1, 2011, when the new edition of the guidelines became effective.  See U.S.S.G.

---

[13]   The Supreme Court has granted certiorari to address whether the FSA applies to all individuals who were sentenced after the Act became effective.  See United States v. Fisher, 635 F.3d 336 (7th Cir. 2011), cert. granted sub nom., Dorsey v. United States, 80 U.S.L.W. 3311, 2011 WL 3422126 (U.S. Nov. 28, 2011).  Curet is not in that position.

-30-

§ 1B1.10(c) (including Amendment 750 to the guidelines, which altered the drug quantity tables based on the FSA, in the list of amendments that are given retroactive effect).

While the amendments to the guidelines are retroactive, they are of no help to Curet because he is a career offender. If only the amended guidelines were the basis for the sentence, Curet would have a somewhat reduced base offense level under the amended drug quantity table -- a reduction from 24 to 20. See U.S.S.G. § 2D1.1(c). But this base offense level is irrelevant given Curet's career offender status. For career offenders, a separately specified base offense level is to apply if it is "greater than the offense level otherwise applicable." Id. § 4B1.1(b). Here, Curet was subject to a career offender base offense level of 37, because the maximum statutory penalty he could have been subject to was life imprisonment. See id.; 21 U.S.C. § 841(b)(1)(B) (2008) (maximum statutory penalty for those who commit a drug violation after a prior conviction for a felony drug offense is "life imprisonment"). This career offender offense level, which was reduced by 2 for a total of 35, renders irrelevant any reduction in the base offense level.

Finally, Curet argues that even if the guidelines themselves do not apply to him, the fact that they were made retroactive should mean that the FSA itself is retroactively applicable. Curet cites no authority for the proposition that the

Sentencing Commission's determination to make certain guideline provisions retroactive could somehow give retroactive force to a statute, and it is illogical. The provision granting the Commission authority to make provisions of the guidelines retroactive provides no such authority; it simply provides that "[i]f the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u). Indeed, the Sentencing Commission's own promulgation of the retroactive amendment explains that "[t]he Fair Sentencing Act of 2010 did not contain a provision making the statutory changes retroactive," and the Commission's amendment to the guidelines "does not make any of the statutory changes in the Fair Sentencing Act of 2010 retroactive." 76 Fed. Reg. at 41,333. Curet's final claim fails.

## III.

The district court committed no reversible error in sentencing Curet. Curet has been ably represented, but we reject his arguments and affirm his sentence.